UNITED STATES *v.* MASSON (No. 762).[1]

ARTISTIC STATUE OF GOLD BRONZE AND IVORY.

The introduction of the artist's affidavit was not objected to below, and its consideration here, accordingly, may not be objected to. Oelrichs *v.* United States (2 Ct. Cust. Appls., 355; T. D. 32091). The testimony shows the object in controversy to be very similar to other objects determined by the courts to be art objects. United States *v.* Tiffany (160 Fed. Rep., 408; Abstract 9957, T. D. 29348). The construction there would seem to have been adopted in existing law, the only change that appears making "statuary" and "sculptures" interchangeable terms. The importation was dutiable as a sculpture under paragraph 470, tariff act of 1909.

United States Court of Customs Appeals, April 17, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26550 (T. D. 31866).

[Affirmed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Leland N. Wood,* assistant attorney, on the brief), for the United States. *Williams, Thomas & Williams* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

A statue made of gold bronze and ivory was classified by the collector of customs at Baltimore as a manufactured article composed in part of metal, and it was therefore assessed for duty at 45 per cent

---

[1] Reported in T. D. 32459 (22 Treas. Dec., 729).

ad valorem under the provisions of paragraph 199 of the tariff act of 1909, which said paragraph reads as follows, to wit:

199. Articles or wares not specially provided for in this section, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem.

To this classification and to the duties assessed the importer objected, and as grounds for his objection set up the claim that the importation was dutiable either as statuary, under paragraph 470, or as a manufacture in chief value of ivory, under paragraph 464, which said paragraphs are as follows:

470. Paintings in oil or water colors, pastels, pen and ink drawings, and sculptures, not specially provided for in this section, fifteen per centum ad valorem; but the term "sculptures" as used in this act shall be understood to include only such as are cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as are the professional production of a sculptor only, and the term " painting" as used in this act shall be understood not to include such as are made wholly or in part by stencilling or other mechanical process.

464. Manufactures of gutta-percha, ivory, vegetable ivory, mother-of-pearl and shell, plaster of Paris, papier-maché, and vulcanized india rubber known as "hard rubber," or of which these substances or any of them is the component material of chief value, not specially provided for in this section, and shells engraved, cut, ornamented, or otherwise manufactured, thirty-five per centum ad valorem.

The Board of General Appraisers sustained the protest and the Government appealed.

The statue is entitled "La Gloire," and as shown by the photograph in evidence represents a helmeted, military figure, clothed in armor, with the left hand grasping a staff bearing a banner and the right clasping in front of the breast a sword pointed obliquely downward.

On the hearing William S. Thomas testified that the statue was made by Hannaux, a celebrated French artist, and that he had purchased it while it was on exhibition at the Paris salon of 1910. The witness further stated that the face and hands of the statue were of carved ivory and that the rest of the figure was of gold bronze.

At the time of the entry the importer presented to the collector an affidavit, dated July 9, 1910, in which Hannaux, the artist, stated that he had been a sculptor for 30 years; that he was adjudged the prize for sculpture at Rome in 1897, and that in 1903 he was awarded the first medal of honor in the salon of that year for French artists. This affidavit appears to have been a part of the record forwarded by the collector to the Board of General Appraisers, and the witness, Thomas, referred to it as evidence which he desired to introduce. The affidavit was not questioned in any way by the Government on the hearing, and no objection having been then made to its consideration by the Board of General Appraisers, we think it is now too late to dispute its admissibility. Fairness to trial tribunals requires that they should have the opportunity of passing on objections to the

competency of evidence and that such objections should not be raised for the first time on appeal. Oelrichs v. United States (2 Ct. Cust. Appls., 355; T. D. 32091). This rule should be doubly respected in the case of a tribunal in which the natural desire to save expense and to shorten hearings has developed the practice of presenting secondary and hearsay evidence where primary or the best evidence is either not readily accessible or, in view of the amount involved, too expensive to procure. Moreover, had objection to the affidavit been taken before the board the importer might have asked and secured permission to take the deposition of Hannaux, thus avoiding the effect of the objection to the competency of the affidavit. A proper regard for the rights of the importer requires that an objection to form which if taken on the hearing might have been obviated shall not be considered now when the door has been closed to the production of better evidence. We must therefore consider the affidavit of Hannaux as properly in the case and as some evidence of that which it recites.

As no evidence was introduced on the part of the Government, we must assume, at least for the purposes of this appeal, that the statue in question was a work of art, and that it was the professional production of the sculptor, Hannaux, who at the time of its creation was an artist of recognized standing and merit. The testimony of Thomas, the photograph in evidence, and the description of the statue furnished by the affidavit make it very evident that whatever may be their relative artistic merits, "La Gloire" is substantially similar to "La Bellona," the statue of the Goddess of War, which was considered by the Circuit Court of Appeals, in January, 1908, in the case of United States v. Tiffany (160 Fed. Rep., 408). It is also similar to the Knight Templar in full armor which, in the protest of Wright, Kay & Co., was considered by the Board of General Appraisers in November, 1908, Abstract 19957 (T. D. 29348). In both cases the statues were held to be "statuary" as defined by paragraph 454 of the tariff act of 1897, which paragraph differs in no material way from that involved here, save and except that the word "statuary" has been replaced by the word "sculptures." The entire body, the mantle, drapery, helmet, breastplate, cobra, and pedestal of the La Bellona statue were of bronze. The face, arms, and feet were of carved ivory, and the shield was probably of aluminum. The bronze parts of the statue seem to have been cast from models made by the artist. In the case of the Knight Templar in armor, the face was of carved ivory, the figure was of carved marble, and the feet, lower limbs, arms, hood upon the head, and sword were of metal. The method of producing the Knight Templar was found by the board to be similar to that employed in producing the statue La Bellona. Both these cases were decided prior to the tariff act of 1909. Both of them were expressly called to the attention of the Ways and Means

Committee by the "Notes on Tariff Revision," which recommended that the provision for statuary be dropped from paragraph 454 of the tariff act of 1897 and that special "provision be made in Schedule B for sculptured marble, stone, or alabaster, in the form of statues, busts, reliefs, at a specific rate so measured as to have the effect of relegating to the provision for manufactures of marble, etc., the marble work that is manufactured rather than carved or wrought." Instead of adopting this suggestion, Congress reenacted paragraph 454, as paragraph 470 of the new act, without any further change than that of substituting for the word "statuary" the word "sculptures." Whether this change was accomplished in the interest of better English, or whether the legislature sought by using the word "sculptures" to doubly limit the paragraph to those which were cut, carved, or wrought by hand, it is hard to say. It is enough to know, however, that paragraph 454 of the tariff act of 1897 gave to "statuary" exactly the same definition which paragraph 470 of the tariff act of 1909 gives to "sculptures," and that "statuary" and "sculptures" as defined in these paragraphs are to all intents and purposes interchangeable terms. We must, therefore, consider that the interpretation put upon paragraph 454 by the Circuit Court and the Board of General Appraisers was approved, affirmed, and ratified by the passing of paragraph 470 of the tariff act of 1909.

The decision of the Board of General Appraisers is therefore *affirmed.*