**DIAMOND MATCH COMPANY**

v.

**UNITED STATES (Winter, Wolff & Co., Inc., Party in Interest).**

**C.D. 2154; Protest No. 58/21335.**

United States Customs Court,
Third Division.

Feb. 23, 1960.

Lamb & Lerch, New York City (David A. Golden, New York City, of counsel), for plaintiff.

George Cochran Doub, Asst. Atty. Gen. (Richard H. Welsh, New York City, trial atty.), for defendant.

Sharretts, Paley & Carter, New York City (Howard Clare Carter, New York City, of counsel), for party in interest.

Before OLIVER, JOHNSON, and RICHARDSON, Judges.

JOHNSON, Judge.

The merchandise involved in this case consists of wooden spatulas or ice cream sticks, approximately 4½ inches long and three-eighths of an inch wide, imported from Japan, in bundles of 50, held together by a paper band or strip 1½ inches wide. The band is marked "Made

in Japan," but the individual sticks are not marked. Such sticks are used primarily by the ice cream industry for insertion in ice cream bars or confections and are sold to domestic ice cream manufacturers for such use.

The protest herein has been brought by an American manufacturer of ice cream sticks pursuant to section 516(b) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U.S.C.A. § 1516(b)), against the collector's liquidation without the assessment of an additional duty of 10 per centum ad valorem under section 304 of said tariff act, as amended (19 U.S.C.A. § 1304). It is claimed that the individual sticks are the imported articles, and, since they were not marked with the name of the country of origin, the additional duty should have been assessed.

The pertinent provisions of the tariff act, as amended, are as follows:

"§ 516. Appeal or protest by American producers.

\* \* \* \* \* \*

"(b) Classification.—The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of, and the rate of duty, if any, imposed upon, designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him. If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being assessed, he may file a complaint with the Secretary, setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief. If the Secretary decides that the classification of, or rate of duty assessed upon, the merchandise is not correct, he shall notify the collectors as to the proper classification and rate of duty and shall so inform the complainant, and such rate of duty shall be assessed upon all such merchandise entered for consumption or withdrawn

from warehouse for consumption after thirty days after the date such notice to the collectors is published in the weekly Treasury Decisions. If the Secretary decides that the classification and rate of duty are correct, he shall so inform the complainant. If dissatisfied with the decision of the Secretary, the complainant may file with the Secretary, not later than thirty days after the date of such decision, notice that he desires to protest the classification of, or rate of duty assessed upon, the merchandise. Upon receipt of such notice from the complainant, the Secretary shall cause publication to be made of his decision as to the proper classification and rate of duty and of the complainant's desire to protest, and shall thereafter furnish the complainant with such information as to the entries and consignees of such merchandise, entered after the publication of the decision of the Secretary at the port of entry designated by the complainant in his notice of desire to protest, as will enable the complainant to protest the classification of, or rate of duty imposed upon, such merchandise in the liquidation of such an entry at such port. The Secretary shall direct the collector at such port to notify such complainant immediately when the first of such entries is liquidated. Within thirty days after the date of mailing to the complainant of notice of such liquidation, the complainant may file with the collector at such port a protest in writing setting forth a description of the merchandise and the classification and rate of duty he believes proper. \* \* \*

"(c) Hearing and Determination. —A copy of every appeal and every protest filed by an American manufacturer, producer, or wholesaler under the provisions of this section shall be mailed by the collector to the consignee or his agent within five days after the filing thereof, and such consignee or his agent shall

have the right to appear and to be heard as a party in interest before the United States Customs Court. The collector shall transmit the entry and all papers and exhibits accompanying or connected therewith to the United States Customs Court for due assignment and determination of the proper value or of the proper classification and rate of duty. * * * "

"§ 304. Marking of imported articles and containers.

(a) Marking of Articles.—Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

*　　*　　*　　*　　*　　*

"(3) Authorize the exception of any article from the requirements of marking if—

*　　*　　*　　*　　*　　*

"(D) The marking of a container of such article will reasonably indicate the origin of such article;

*　　*　　*　　*　　*　　*

"(b) Marking of Containers.— Whenever an article is excepted under subdivision (3) of subsection (a) of this section from the requirements of marking, the immediate container, if any, of such article, or such other container or containers of such article as may be prescribed by the Secretary of the Treasury, shall be marked in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of such article, subject to all provisions of this section, including the same excep-

tions as are applicable to articles under subdivision (3) of subsection (a). * * *

"(c) Additional Duties for Failure to Mark.—If at the time of importation any article (or its container, as provided in subsection (b) hereof) is not marked in accordance with the requirements of this section, and if such article is not exported or destroyed or the article (or its container, as provided in subsection (b) hereof) marked after importation in accordance with the requirements of this section (such exportation, destruction, or marking to be accomplished under customs supervision prior to the liquidation of the entry covering the article, and to be allowed whether or not the article has remained in continuous customs custody), there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause. * * * "

When this case was called for hearing, counsel for the plaintiff offered in evidence various documents showing compliance with the provisions of section 516 (b), supra (plaintiff's exhibits 1 through 10), and a sample of the imported merchandise (plaintiff's exhibit 11).

Counsel for the party in interest then made three motions to dismiss the protest: (1) On the ground that the court is without jurisdiction to hear and determine this case because the protest seeks a judicial review of the Secretary's exercise of the authority granted to him by section 304(a)(3), supra, to make regulations authorizing the exception of certain articles from the marking requirements and his authorization of the exception involved herein; (2) on the ground that the failure of the collector to comply with section 516(c), supra, by mailing a copy of the protest to the party in interest within 5 days after the filing

thereof is such a defect in procedure as to deprive the plaintiff of any right to have its protest heard and determined; and (3) on the ground that the protest is not signed with the correct name of the plaintiff. The last motion was subsequently withdrawn.

The party in interest claims in the first motion that the issue involves a matter within the discretion of the Secretary of the Treasury which is not reviewable by this court. The plaintiff contends that the protest is against an action of the collector and does not involve a review of any action by the Secretary.

The protest is directed against the collector's liquidation on the ground that the merchandise was not legally marked so that an additional duty of 10 per centum ad valorem should have been assessed under the provisions of section 304(c), supra.

In Bradford Co. et al. (United States Impleaded) v. American Lithographic Co., an American Manufacturer, 12 Ct. Cust.App. 318, T.D. 40318, it was held that the collector's action in determining that the merchandise was legally marked in accordance with the statute was a classification within the meaning of section 516(b) of the Tariff Act of 1922; that an American manufacturer had the right to protest a classification under the marking statute; and that such protest properly invoked the jurisdiction of the Board of General Appraisers (now the Customs Court). The decision of the board sustaining the protest and directing the collector to reliquidate, assessing the additional duty of 10 per centum ad valorem for failure to properly mark the merchandise, was affirmed.

Section 516(b) of the Tariff Act of 1930, as amended, supra, is similar to its predecessor in the Tariff Act of 1922. The protest herein, like that in the Bradford case, is directed against the action of the collector in liquidating the entry without the assessment of additional duty for failure to mark. The authority of the Secretary of the Treasury is involved only insofar as the collector's decision is based upon the regulations is-

sued by the Secretary pursuant to the authority given to him by section 304(a)(3)(D), supra.

The statute provides that the Secretary of the Treasury may by regulations authorize the exception of any article from the marking requirements, if the marking of a container will reasonably indicate the origin of such article. Under said provision, the Secretary has issued section 11.10 of the Customs Regulations, which provides:

"*11.10    Exceptions to marking requirements.*—(a) Articles within any specification in section 304(a)(3), Tariff Act of 1930, as amended, are hereby excepted from the requirement of marking. The marking of the container of an article will reasonably indicate the origin of such article within the meaning of section 304(a)(3)(D) if the article is imported * * * in a container which will reach the ultimate purchaser in the United States unopened. * * *"

Under this regulation, it became the practice not to assess an additional duty of 10 per centum ad valorem under section 304(c), supra, on ice cream sticks imported in packages of 50, enclosed within a narrow paper band marked with the name of the country of origin, but with no marking on the individual sticks. Subsequent to the filing of a complaint by the plaintiff herein under section 516(b), supra, the Treasury Department, over the signature of the Acting Commissioner of Customs, published a decision, 92 Treas.Dec. 276, T.D. 54459, stating in part:

"The Bureau, however, is of the opinion that the ice cream manufacturer is the 'ultimate purchaser' of the imported sticks under the principle of the decision in the case of United States v. Gibson-Thomsen Company, Inc., 1940, 27 CCPA (Customs) 267, C.A.D. 98, so that the individual sticks are excepted from marking under section 304(a)(3)(D) and the 10 percent additional duty provided for in section 304

(c) of the act is not assessable because the sticks are not individually marked.

"In view of the foregoing, the Bureau approves the practice of not assessing additional duty under section 304(c) when the wrapper around the package is marked but the individual sticks are not marked to indicate the country of origin.

"In accordance with the provisions of section 516(b), as amended, notice is hereby given that The Diamond Match Company has given the notice contemplated by the statute that it desires to protest this practice of not assessing additional duty under section 304(c) on these sticks. However, under section 516(b), as amended, this practice will be continued so long as no decision of the United States Customs Court or of the United States Court of Customs and Patent Appeals not in harmony with this decision is published."

It is evidently the contention of the party in interest that this decision, approving the practice of the collector of classifying ice cream sticks as not subject to marking duty, is a discretionary act of the Secretary of the Treasury which may not be reviewed by the courts.

The authority vested in the Secretary under section 304(a) must be exercised by the issuance of *regulations*. Treasury Department Order No. 165, Revised, 89 Treas.Dec. 334, T.D. 53654, provides that *regulations* shall be prescribed by the Commissioner of Customs, with the approval of the Secretary of the Treasury. The decision in T.D. 54459 is not and does not purport to be a regulation issued by the Secretary of the Treasury under section 304(a), supra. Mitsui & Co., Ltd. v. United States, 73 Treas. Dec. 109, T.D. 49357; Freedman & Slater, Inc. v. United States, 32 Cust.Ct. 325, C.D. 1621.

The *regulation* promulgated by the Secretary of the Treasury under section 304(a)(3)(D), supra, is found in section 11.10(a) of the Customs Regulations,

supra. No issue has been raised in this case as to the authority of the Secretary to make this regulation nor has its validity or reasonableness been questioned.

It is evident from the statute that the discretionary authority vested in the Secretary of the Treasury is whether or not to make regulations permitting the exception of articles from the marking requirements, if they meet the conditions described in the act. It is within his discretion to make or refuse to make such regulations. Givaudan Delawanna, Inc., v. United States, 64 Treas.Dec. 417, T.D. 46697, affirmed in 22 CCPA (Customs) 115, T.D. 47104; F. L. Smidth & Co. et al. v. United States, 64 Treas.Dec. 338, T.D. 46663; Eurasia Import Co., Inc. v. United States, 3 Cust.Ct. 169, C.D. 226, appeal dismissed, 28 CCPA (Customs) 349. Any regulations he makes must conform to the statute. Givaudan Delawanna, Inc. v. United States, supra; G. W. Sheldon & Co. v. United States, 23 CCPA (Customs) 168, T.D. 48013. The court may determine whether the marking on the particular articles imported is in conflict with the regulations, and, if so, whether the regulations are reasonable and within the power of the Secretary under the statute. Gibson-Thomsen Co., Inc. v. United States, 2 Cust.Ct. 172, C.D. 117, affirmed sub nom. United States v. Gibson-Thomsen Co., Inc., 27 CCPA (Customs) 267, C.A.D. 98; Eurasia Import Co., Inc. v. United States, supra; Dr. Gemma Barzilai v. United States, 4 Cust.Ct. 25, C.D. 275; Hudson Shipping Company, Inc. v. United States, 30 Cust. Ct. 116, C.D. 1507.

The case last cited involved section 304 (a)(3)(D) of the Tariff Act of 1930, as amended, supra and section 11.10(*a*) of the Customs Regulations of 1943, which provided:

"* * * The marking of the container of an article shall be regarded as reasonably indicating the origin of such article within the meaning of section 304(a)(3)(D), Tariff Act of 1930, as amended, if the container is sealed and the article is usually sold to the ultimate pur-

chaser without the container being opened to make the article readily available for inspection. * * *"

The merchandise consisted of artificial fireplaces, which were not marked, packed in cartons which were marked with the name of the country of origin. The articles were shipped to the ultimate consumer as imported without the cartons being opened. It was held that the merchandise fell squarely within the exception provided for in the regulations and was legally marked. The protest against the collector's assessment of additional duty was sustained.

On the other hand, in Dr. Gemma Barzilai v. United States, supra, it was held that the merchandise did not fall within the exceptions provided for in the statute and the regulations there involved.

▌ The issue in the instant case is whether or not the collector properly classified the merchandise as falling within the exception provided for in section 304(a)(3)(D) of the Tariff Act of 1930, as amended, and section 11.10(a) of the Customs Regulations. That question is subject to review by the courts. No judicial review of any exercise of discretionary authority by the Secretary of the Treasury is involved. The motion to dismiss the protest on that ground is denied.

The second motion made by the party in interest is for dismissal of the protest on the ground that the collector's failure to comply with section 516(c), supra, deprived the plaintiff of the right to have the issues raised by the protest heard and determined by the court.

Section 516(c) provides that a copy of every protest filed by an American manufacturer shall be mailed by the collector to the consignee or his agent within 5 days after the filing thereof, and such consignee or agent shall have the right to appear and to be heard as a party in interest in the United States Customs Court.

In the instant case, the protest was filed with the collector at Los Angeles on October 20, 1958, but a copy was not sent to the party in interest until November 10, 1958, more than 5 days after filing. A notice of appearance on behalf of the party in interest, dated November 25, 1958, was filed in this court on November 28, 1958, and said party has participated in the proceedings since then.

It has been held that the provisions of section 516(b), supra, are mandatory and that strict compliance therewith is a condition precedent to the privilege of filing a protest thereunder. Porcelain Enamel Institute v. United States (Langlotz & Co., Inc., Party in Interest), 64 Treas. Dec. 478, T.D. 46713; American Manufacturing Co. v. United States (Burka Bagging Co., Party in Interest), 62 Treas.Dec. 305, T.D. 45924; Reed & Barton et al. v. United States, 63 Treas. Dec. 941, T.D. 46422; The Cronite Co., Inc. v. United States (W. E. Sellers, Doing Business Under the Name of John Sellers & Sons, Party in Interest), 38 Cust.Ct. 76, C.D. 1847, affirmed sub nom. W. E. Sellers (Party in Interest, Doing Business as John Sellers & Sons) v. The Cronite Co., Inc., 45 CCPA (Customs) 27, C.A.D. 668.

In the instant case, plaintiff has complied with all the requirements of section 516(b) and has thus met the conditions precedent to the filing of a valid protest. The question is whether the failure of the collector to comply strictly with the provisions of section 516(c), which take effect subsequent to the filing of the protest, can deprive plaintiff of the right of having its case heard on the merits.

▌ It has been held that the failure on the part of Government officials to comply with mandatory regulations may not be allowed to deprive an importer of his rights. Penick & Ford (Ltd., Inc.) v. United States, 12 Ct.Cust.App. 432, T.D. 40611; Armour and Company v. United States, 29 Cust.Ct. 296, C.D. 1482, and cases cited; The American Distilling Company v. United States, 32 Cust.Ct. 168, C.D. 1598. As a general rule, a statute which provides a time for the performance of an official duty will be con-

strued as directory so far as time of performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure. State ex rel. Jones v. Farrar, 146 Ohio St. 467, 66 N.E.2d 531; Maryland Casualty Co. v. Cardillo, 69 App.D.C. 199, 99 F.2d 432; United States v. Morris, 5 Cir., 252 F.2d 643; 50 Am.Juris., Statutes, section 23. Where a mandatory construction might do great injury to persons not at fault, where there is no substantial reason why the thing required by statute might not as well be done after the time prescribed as before, where there is nothing to indicate that the legislature did not so intend, the courts will deem the statute directory merely. Sutherland, Statutory Construction, volume 3, section 5816; State v. Industrial Commission, 233 Wis. 461, 289 N.W. 769. Statutes fixing the time for the performance of acts will ordinarily be held directory where there are no negative words restraining the doing of the act after the time specified and no penalty is imposed for delay. Chisholm v. Bewley Mills, 155 Tex. 400, 287 S.W.2d 943; Brenner v. Bruckman, 253 App.Div. 607, 3 N.Y.S.2d 265; Sutherland, Statutory Construction, volume 3, section 5818; 82 C.J.S. Statutes, § 379.

It is evident that the purpose of section 516(c), supra, is to insure that the party in interest be notified of the filing of the protest so that it may appear and be heard in the subsequent proceedings before the court. In the instant case, there is nothing to indicate nor is it claimed that the party in interest was injured by the collector's delay in sending it a copy of the protest. It has appeared and is being heard. The plaintiff herein had no control over the action or inaction of the collector nor was it at fault in any way. The statute does not restrain the doing of the act after the time limit or state any consequences if action is delayed.

In our view, section 516(c), supra, is directory as far as time of performance is concerned. The collector's failure to act within the prescribed time does not deprive the plaintiff of its right to have its day in court, particularly where, as here, the party in interest has been in no way prejudiced. The motion of the party in interest to dismiss the protest on this ground is denied.

The motions of the party in interest to dismiss the protest having been denied or withdrawn, the protest is restored to the calendar for trial on the merits.

It is so ordered.