**CANADIAN FUR TRAPPERS CORP.,**

and

**Meldisco, a division of Melville Corp., Plaintiffs-Appellants,**

v.

**The UNITED STATES, Defendant/Cross-Appellant.**

**Nos. 89–1060, 89–1061, 89–1062.**

United States Court of Appeals, Federal Circuit.

Aug. 29, 1989.

Donald B. Cameron, Jr., Mudge Rose Guthrie Alexander & Ferdon, Washington, D.C., argued for plaintiffs-appellants, Meldisco, a division of Melville Corp. With him on the brief was Teresa M. Polino. Brian S. Goldstein, Siegel, Mandell & Davidson, P.C., of New York City, argued for plaintiffs-appellants, Canadian Fur Trappers Corp.

Velta A. Melnbrencis, Dept. of Justice, Washington, D.C., argued for defendant/cross-appellant. With her on the brief were John R. Bolton, Asst. Atty. Gen., and David M. Cohen, Director. Also on the brief were Edward N. Maurer, General Attorney, Office of Asst. Chief Counsel for International Trade Litigation, New York City, Michael A. Levitt, Acting General Counsel, Stephen J. Powell, Chief Counsel for Import Adm'n and Matthew Jaffe, U.S. Dept. of Commerce, of counsel.

Lauren R. Howard and Michael R. Kershow, Collier, Shannon, Rill & Scott, Washington, D.C., were on the brief for amicus curiae, Footwear Industries of America, Inc.

Before FRIEDMAN, RICH and MICHEL, Circuit Judges.

MICHEL, Circuit Judge.

Canadian Fur Trappers Corp. (Canadian Fur) and Meldisco, a division of Melville Corp., appeal the decision of the United States Court of International Trade, 691 F.Supp. 364 (Ct.Int'l Trade 1988), holding that these companies' respective imported footwear entries which were subject to assessment of countervailing duties were not deemed liquidated, pursuant to 19 U.S.C. § 1504 (1982 and Supp. III 1985), when the U.S. Customs Service failed to liquidate the entries within 90 days after the dismissal of a lawsuit which challenged the rates of duty. In addition, Canadian Fur and Meldisco appeal the holding of the Court of International Trade that interest could be assessed upon underpayments of countervailing duties against their respective entries. The United States (government) cross-appeals that part of the decision holding that the amendment of the interest provision of the Trade and Tariff Act of 1984 was inapplicable to interest prior to the effective date of the 1984 Act. We affirm.

## Background

Because Canadian Fur's and Meldisco's goods were subject to an outstanding countervailing duty order, T.D. 74–235, the two importers deposited estimated countervailing duties upon the entry of their goods. Pursuant to 19 U.S.C. § 1675 (1982 and Supp. III 1985), the Commerce Department undertook annual reviews for the importers' 1980–1982 entries. Liquidation of these entries was suspended, however, until the Commerce Department completed a final determination in each annual review. In the final results of these reviews, Commerce determined there were net subsidies greater than the estimated rate of countervailing duty paid by the importers at the time of entry. 48 Fed.Reg. 40,536 (1983); 49 Fed.Reg. 30,003 (1984). Therefore, both importers owed additional duties.

Prior to liquidation, however, these importers' entries were enjoined by court order from being liquidated because of a lawsuit challenging the rates of duty applied by the Customs Service. This lawsuit was voluntarily stipulated by all parties as dismissed on May 15, 1985. Five months after the voluntary dismissal, the government moved to dissolve the injunctions. The Court of International Trade granted

that motion; however, upon rehearing, the court vacated its order, holding that the injunctions dissolved on May 15, 1985, when the case was voluntarily dismissed.

After the Court of International Trade set the date of dissolution as May 15, 1985, the Customs Service began to liquidate the entries assessing additional duties based on the final results of the administrative reviews and interest on any underpayments. The importers challenged the validity of these liquidations asserting that 19 U.S.C. § 1504 requires that the liquidations take place within 90 days of the lifting of a court ordered suspension of liquidation. The Court of International Trade granted partial summary judgment to the government determining that the 90 day language was directory, not mandatory, and therefore the liquidations were valid. Since the liquidations were valid, and since the estimated duties deposited were less than the assessed duties, the Court of International Trade also granted the government partial summary judgment with regard to the interest owed by the importers pursuant to 19 U.S.C. § 1677g (1982). However, the court granted the importers partial summary judgment, holding that the interest owed would not be compounded daily except for liquidations occurring after the effective date of the Trade and Tariff Act of 1984.

## OPINION

"Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). Moreover,

[t]he court must resolve all significant doubt over material factual issues, if any, in favor of the nonmovant and draw all reasonable inferences against the party whose motion is being considered. (Citation omitted.) Where the only issue before the Court of International Trade was the meaning of the tariff terms, a question of law, (citation omitted) our court independently determines the meaning of those terms and need not

defer to the trial court. (Citation omitted.)

*Convertors Division of American Hospital Supply Corp. v. United States*, 861 F.2d 710, 712 (Fed.Cir.1988).

### I. 19 U.S.C. § 1504

"The starting point in every case involving construction of a statute is the language itself." *Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629 (Fed.Cir. 1989). Section 1504 was enacted as part of the Customs Procedure Reform and Simplification Act of 1978, Pub.L. 95–410, 1978 U.S.Code Cong. & Admin.News (92 Stat. 888) 2211, 2242. It was amended slightly in 1984. 19 U.S.C. § 1504 (1982 and Supp. III 1985). The relevant statutory language securing a time frame for liquidation in 19 U.S.C. § 1504 reads:

(a) Liquidation.

Except as provided in subsection (b) of this section, an entry of merchandise not liquidated within one year from:

(1) the date of entry of such merchandise;

. . . .

*shall be deemed liquidated* at the rate of duty, value, quantity, and amount of duties asserted at the time of entry. . . .

(b) Extension

The Secretary may extend the period in which to liquidate an entry ... if—

. . . .

(2) *liquidation is suspended as required by statute or court order;* ...

. . . .

(d) Limitation

Any entry of merchandise not liquidated at the expiration of four years from the applicable date specified in subsection (a) of this section, *shall be deemed liquidated* at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer ... *unless liquidation continues to be suspended as required by statute or court order. When such a suspension of liquidation is removed, the entry*

*shall be liquidated within 90 days therefrom.*

(Emphasis added.)

 Since the Customs Service failed to liquidate the entries which were more than one year old within 90 days of May 15, 1985, Canadian Fur and Meldisco argue that they owe no additional duties on their entries. They assert that once the Customs Service fails to complete the liquidation within the 90 day period, the articles must be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer. The United States argues that the first part of section (d) applies only to extensions of the period in which to liquidate an entry sought for reasons other than a suspension order. Moreover, the government contends that the language "shall be liquidated within 90 days" in 19 U.S.C. § 1504(d) is only directory; therefore, additional duties with interest calculated according to 19 U.S.C. § 1677g are owed by the importers.

While Congress included the operative language "deemed liquidated" in section (a) and the first part of section (d), no such consequential language appears in the final part of section (d). Even though the statute includes a 90 day time frame for the Customs Service to act, the lack of consequential language in the latter part of section (d) if the Customs Service does not meet that time frame leads us to conclude that Congress intended this part of section (d) to be only directory. *See Diamond Match Co. v. United States*, 181 F.Supp. 952, 958–59 (Cust.Ct.1960), *aff'd*, 49 CCPA 52, 56 (1962).

We need not look merely at the statutory language to support our conclusion. "[T]he plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.'" *Watt v. Alaska*, 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). Such evidence can be found in the Report of the House of Representatives committee which drafted the proposed statute. Referring to the 90 day time frame in the last part of

§ 1504(d), the House Report states, "[t]his last provision is discretionary, rather than mandatory, and recognizes that there will be instances when it may be impossible to complete liquidation within 90 days because of the sheer number of entries to be liquidated after a long-continued suspension." H.R.Rep. No. 621, 95th Cong., 1st Sess. 26 (1977). Similar language need not appear in the Senate Report in order for this statement to be persuasive to us.

Clearly, the statutory language and its legislative history support the Court of International Trade's interpretation of the statute. We therefore affirm the decision of the Court of International Trade regarding the interpretation of 19 U.S.C. § 1504.

## II. Imposition of Interest on Underpayments of Countervailing Duties

 Prior to the enactment of the Trade Agreements Act of 1979, interest on underpayments or overpayments was not required by law. Pursuant to the Act, 19 U.S.C. § 1677g (1982), interest is imposed on any underpayment or overpayment of estimated duties deposited for merchandise entered for consumption on or after publication of the final injury determination by the United States International Trade Commission (ITC).

In this appeal, since Canadian Fur's and Meldisco's estimated duties were less than the amount ultimately assessed, the United States argues that interest is due on the difference. Canadian Fur and Meldisco argue that no interest is due because the order triggering their obligation was issued pursuant to a statutory scheme which did not require the payment of interest. They assert that any change to that scheme retroactively applying an interest obligation must be explicit.

The Trade Agreements Act of 1979 provides that before any countervailing duties may be imposed on a country which is a signatory to the General Agreement on Tariffs and Trade (GATT), the ITC must make an injury determination. 19 U.S.C. § 1671(a)(2). Because Canadian Fur's and Meldisco's goods entered subject to a 1974 countervailing duty order issued under 19

U.S.C. § 1303 (1976), no such injury determination was required.[1]

At the same time Congress created section 1671, it amended section 1303, making that section applicable to countries which were not signatories of GATT and to outstanding orders which were issued under the old section 1303. The amended section 1303 reads in pertinent part:

(b) Regulations prescribed by administering authority; imported articles or merchandise which are not duty free

The duty imposed under subsection (a) of this section shall be imposed, under regulations prescribed by the administering authority (as defined in section 1677(1) of this title), in accordance with subtitle IV of this chapter (relating to the imposition of countervailing duties) except that, in the case of any imported article or merchandise which is not free of duty—

(1) no determination by the United States International Trade Commission under section 1671b(a), 1671c, or 1671d(b) of this title shall be required,

. . . .

(4) any reference to determinations by the Commission ... which are not permitted or required by this subsection shall be disregarded.

19 U.S.C. § 1303 (1982).

Although 19 U.S.C. § 1677g (1982) requires an injury determination before interest can be imposed on the difference between the estimated amount deposited by an importer and the amount finally assessed, the amended version of 19 U.S.C. § 1303 (1982) indicates that "any reference to determinations by the Commission ... which are not permitted or required by this subsection shall be disregarded." Construing the amendment of section 1303 and the provisions of the Trade Agreements Act *in pari materia, see Oregon Steel Mills Inc. v. United States,* 862 F.2d 1541 (Fed.Cir.

1988), we conclude that although an injury determination is generally required before interest can be imposed on underpayments, Congress excepted this requirement when an order such as this was issued pursuant to 19 U.S.C. § 1303 (1982).

Moreover, the legislative history of the 1979 Act indicates that Congress made the provisions of 19 U.S.C. §§ 1671–1677 applicable to actions fitting under the amended section 1303.

The committee believes the procedures and standards under [the] new title [on countervailing duties for GATT signatories] are a significant improvement over existing law and practice and should be applied to section [1]303. Obviously, all references to injury and all determinations relating to injury under [this] title ... are irrelevant to proceedings under section [1]303 which do not require an injury determination.

S.Rep. No. 249, 96th Cong., 1st Sess. 104, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 490.

In view of the statutory language and supporting legislative history, we hold as did the court below that Canadian Fur and Meldisco owe interest on their respective underpayments.

### III. Date of Liability for Interest

■ Canadian Fur and Meldisco argue that liability for interest, if any existed, did not exist until on or after the date on which the final section 751 decision is published. Since their goods were subject to a 1974 order and not to an order issued under the 1979 provisions, the importers argue that liability for interest would not accrue until deposits are made pursuant to the results of the first section 751 review.[2] We note, as did the court below, that the deposits on these importers' goods were made on entries after the effective date of the 1979

---

1. Prior to 1979, section 1303 did not require an injury determination by the ITC unless it was required by international obligations in the case of duty free goods. *Canadian Fur,* 691 F.Supp. at 370.

2. As the Court of International Trade points out, however, "No deposits were required on merchandise entered after the first review determination because the countervailing duty order was subsequently revoked, effective for all entries after May 3, 1982." *Canadian Fur,* 691 F.Supp. at 371 n. 2.

Act. Since section 1303, as amended, as well as the interest provision in section 1677g, were in effect before the goods entered, the 1974 order covering the importers' goods was governed by the new countervailing duty law, and therefore interest accrued according to the terms of the 1979 Act, irrespective of 751 reviews.

### IV. Method for Calculating Interest

Prior to the Trade and Tariff Act of 1984, "the date when an importer's liability for interest was defined was the date of the final determination in the § 751 review ... irrespective of when liquidation occurred." *Canadian Fur*, 691 F.Supp. at 372–73. The Customs Service used simple interest to calculate the interest owed on the underpayment. The 1984 Act amended section 1677g to provide that interest due under it must be compounded in accordance with 26 U.S.C. § 6621; it also changed the date for liability to:

> (a)(1) the date of publication of a countervailing or antidumping duty order under this subtitle or section 1303 of this title,....

Note (b)(4) to 19 U.S.C. § 1671 (Supp. V 1987) states that as to the effective date, the amendment to 1677g applies "with respect to merchandise that is unliquidated on or after November 4, 1984." Tax Reform Act of 1986, Pub.L. 99–514, 1986 U.S. Code Cong. & Admin.News (100 Stat. 2085, 2923, 4075.) The entries in dispute were made before this amendment but liquidated after the Act became effective.

The Court of International Trade concluded that the 1979 simple interest provision was applicable for the interest accruing prior to the effective date of the 1984 Act, but determined for interest accruing subsequent to the effective date, the appropriate method for calculating interest could be found in 26 U.S.C. § 6621. We agree. The clear meaning of the statutory language is to start compounding interest on or after November 4, 1984.

Accordingly, the decision of the Court of International Trade is

AFFIRMED.

FRIEDMAN, Circuit Judge, concurring.

I join the court's opinion and write separately to make an additional point.

The language of 19 U.S.C. § 1504 supports, if it does not compel, the court's holding that these entries were not "deemed liquidated" 90 days after the injunctions against their liquidation were dissolved. In that section Congress simply did not address the issue this case involves.

In terms of the overall statutory scheme, however, the appellants' argument has considerable appeal. Section 1504 appears to be a comprehensive congressional attempt to deal with liquidation. There seems to be no valid reason why, if the suspension of the liquidation is terminated more than four years after entry of merchandise and Customs fails to liquidate within 90 days after the suspension has terminated, the entry should not be deemed liquidated as of the date of entry of the merchandise.

This is the general procedure that section 1504(a)(1) provides in cases where Customs fails to liquidate within the specified statutory period. The statute gives Customs generally one year from the time of entry to liquidate; permits the Secretary to extend the time of liquidation for any of the three circumstances specified in subsection (b), one of which is a suspension of liquidation required by statute or court order; and provides that except for such statutory or judicial suspension, the entry shall be deemed liquidated as of the date of entry if the liquidation has not been made within four years of entry. The statute, however, does not state what happens if the suspension is terminated (1) more than one, but less than four, years after entry, or (2) as in the present case, after the four-year period has expired.

One would think that in the latter situation Congress would have intended to make applicable the same procedure it used elsewhere in the statute that, if Customs failed to liquidate within the stated period of 90 days, the entries would be deemed liquidated as of the date of entry. But Congress did not so provide. It stated only

that the entry "shall be liquidated" within the 90 days and did not specify (as it did elsewhere in the statute) what the consequence of failure so to liquidate would be.

The appellants ask us to rewrite the statute to supply the details that Congress omitted, i.e., to specify the consequence of nonliquidation. The court properly declines to take that action. Our function is to construe and apply the statute as written, not to rewrite the statute to achieve what may appear to be a fair or desirable result. To the extent the court's decision produces any anomalous or inconsistent results, that is the consequence of the inartful and confusing way this statutory provision has been written.