1038

(Decided December 20, 1989)

*Sharretts, Paley, Carter & Blauvelt* (*Allan H. Kamnitz* and *Donna L. Shira*), for plaintiff.

*Stuart M. Gerson*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office (*Nancy M. Frieden*), for defendant.

## OPINION

CARMAN, *Judge:* Plaintiff, Aladdin International Corp. (Aladdin), challenges the United States Customs Service's (Customs or the government) classification of a plastic lunch box and beverage flask imported by Aladdin from Brazil. Jurisdiction lies under 28 U.S.C. § 1581(a) (1982). The parties have cross-moved for summary judgment.

Customs classified the lunch box and beverage flask as an entirety under the provision for "Luggage * * * Of other material * * * Other * * * Other * * *" item 706.62, of the Tariff Schedules of the United States (TSUS), with a duty of 20 percent *ad valorem*. Aladdin claims the lunch box and beverage flask are properly classified together as an entirety under TSUS item A772.15, as "[a]rticles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients * * * of rubber or plastics * * *Other," free of duty pursuant to the Generalized System of Preferences. In the alternative, Alladin claims the lunch box and beverage flask should be classified as separate articles of commerce under the same provision, item A772.15, TSUS. Aladdin also contends its claimed classification should prevail over the government's classification by application of the rule of relative specificity. Aladdin requests judgment directing Customs to reliquidate the entry accordingly and dismissing the government's summary judgment motion.

The government claims that its classification was correct, Aladin's proposed classification is less specific than Customs' classification, the merchandise was properly classified as an entirety and Aladdin has generally failed to overcome the presumption of correctness attaching to Customs' classification. The government seeks affirmance of its classification and judgment granting its summary judgment motion and dismissing the action.

On the basis of the arguments of the parties, the papers submitted and all other proceedings had herein, this Court finds that summary judgment is appropriate as there are no genuine material facts in issue. While the Court finds that the merchandise in question does not comprise an entirety, it finds Aladdin has not overcome the presumption of correctness concerning the lunch box,

which was properly classified by the government as luggage under TSUS item 706.62. Aladdin has overcome the presumption of correctness concerning the beverage flask, which is properly classified under TSUS item A772.15, for plastic articles chiefly used for storing or serving food or beverages.

## BACKGROUND

By stipulation the parties have agreed to the following facts.

The merchandise in issue is a plastic container and beverage flask imported from Brazil, each part of which is in chief value of plastic. The plastic container, or in common parlance, the lunch box,[1] has a secure clasp to keep the box closed, an adjustable carrying strap that can be used as a handle or as an over the shoulder carrying strap, and is fitted with a divider which is designed to hold the beverage flask in a particular place within the box. An illustration, intended to appeal to children, appears on one side of the container.

The plastic beverage flask is designed to assist in retaining the heat or cold of the liquid or food stored in it. It has a screw top which when removed reveals a screw lid with a movable spout. The spout permits the insertion of a straw for the convenience of removing liquids or allows the liquid to be poured out of the flask. The flask may also be used to store food which can be reached by removing the lid that contains the spout. The flask is also decorated with an illustration carrying out the theme appearing on the lunch box.

The imported merchandise is of the type used by young children to carry lunch or snacks to school or to activities away from home. Pre-teenage children chiefly use the lunch box to carry or store food until it is ready to be consumed. The beverage flask is chiefly used by pre-teenage children as a storage and serving container for beverages and food.

The parties have also agreed that Aladdin has met all the requirements for duty-free treatment under the General System of Preferences should the merchandise be reclassified under Aladdin's claimed alternative.

*Classified Under:*

Schedule 7, part 1, subpart D, item 706.62 provides:

Luggage and handbags, whether or not fitted with bottle, dining, drinking, manicure, sewing, traveling, or similar sets * * *.
*      *      *      *      *      *      *

Of other material ........................................
*      *      *      *      *      *      *

---

[1]The parties were unable to agree on an acceptable term for the "plastic container." *See* Stipulation at 1 n.1. Aladdin refers to it as a "sandwich box"; the government refers to it as a "lunch box kit." A representative sample of the imported merchandise was submitted to the Court for examination. After careful examination this Court concludes the item is none other than a typical plastic lunch box reminiscent of childhood and the Court will refer to it as such.

Other............................................

Other .............................20% ad val.

*Alternative Claimed by Plaintiff:*

Schedule 7, part 12, subpart C, item A772.15 provides:

Article chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and household articles not specially provided for; all the foregoing of rubber or plastics * * *.

Salt, pepper, mustard, and ketchup dispensers, and similar dispensers .............................................

Plates, cups, saucers, soup bowls, cereal bowls, sugar bowls, creamers, gravy boats, serving dishes, and platters ........

Trays ...............................................

Other ........................................... Free

## DISCUSSION

This Court may properly grant summary judgment "only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Canadian Fur Trappers Corp.* v. *United States,* 884 F.2d 563, 565 (Fed. Cir. 1989) (quoting *Mingus Constructors, Inc.* v. *United States,* 812 F.2d 1387, 1390 (Fed. Cir. 1987)). A presumption of correctness exists in favor of Customs' classification of an imported product and the burden of proof rests upon the party challenging the classification. 28 U.S.C. § 2639(a)(1) (1982); *Jarvis Clark Co.* v. *United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied,* 2 Fed. Cir. (T) 97, 739 F.2d 628 (1984).

The presumption of correctness pertains not only to Customs' final classification, but also to every element necessary to support its determination. *United States* v. *New York Merchandise Co., Inc.,* 58 CCPA 53, 58, C.A.D. 1004, 435 F.2d 1315, 1318 (1970); *Schott Optical Glass, Inc.* v. *United States,* 82 Cust. Ct. 11, 15, C.D. 4783, 468 F. Supp. 1318, 1320, *aff'd,* 67 CCPA 32, C.A.D. 1239, 612 F.2d 1283 (1979). In order to determine whether Customs' classification is correct, this Court must consider Customs' classification both independently and in comparison with the plaintiff's alternatives. *Jarvis Clark,* 2 Fed. Cir. (T) at 75, 733 F.2d at 878.

## ENTIRETIES DOCTRINE

The preliminary issue before this Court is whether Customs properly classified the imported merchandise as an entirety.

In general, the case law teaches that articles will be treated as an entirety if the articles, when combined, result in a new article that has a character or use distinct from that of the articles alone. *E.M. Stevens Corp.* v. *United States,* 49 Cust. Ct. 203, 204, Abs. 66971 (1962), *appeal dismissed,* 53 CCPA 155 (1966). Further, if one part is

"merely incidental to the predominant part insofar as the character or use of the combination is concerned," the parts will be considered an entirety. *Id.* In contrast, "if the imported articles, when combined, nevertheless retain their individual identities and do not become subordinated to the whole, then the articles are not dutiable as an entirety." *Mattel, Inc.* v. *United States,* 8 CIT 323, 324–25 (1984) (citing *Donalds, Ltd., Inc.* v. *United States,* 32 Cust. Ct. 310, 315, C.D. 1619 (1954)).

Due to the myriad factual variations of importations, the contours of the entireties doctrine have evolved on a case by case basis. In interpreting the case law applying the entireties doctrine, this Court is mindful of the overriding concern to effectuate the intent of Congress. *Miniature Fashions, Inc.* v. *United States,* 54 CCPA 11, 16, C.A.D. 894 (1966).

The court has taken various factors into consideration in determining whether articles constitute entireties. In *United States* v. *John Wanamaker, Philadelphia, Inc.,* 20 CCPA 367, 369 (1933) the court considered whether the articles had a natural affinity or relation to each other or whether one article was essential to the completeness of the other. Whether parts were designed to be joined or sold as separate articles of commerce was taken into consideration in *Altman & Co.* v. *United States,* 13 Ct. Cust. App. 315, 318 (1925). Additionally, whether the merchandise is designed, packaged, sold and purchased as a unit has been examined, but not found to be determinative of the entirety inquiry. *Determined Productions, Inc.* v. *United States,* 10 CIT 131, 132 (1986); *United States* v. *Altray Co.,* 54 CCPA 107, 110, C.A.D. 919 (1967); *Lang Co.* v. *United States,* 15 CCPA 341, 342 (1927); *Mattel,* 8 CIT 323.

In *Altray,* the Court determined that miniature artificial Christmas trees adhesively affixed at their bases to foil wrapped chocolate wafers were not entireties for customs purposes. The court based its holding on the following proposition:

> [W]here the design of the combination in issue by its very nature contemplates its disassembly and the utilization of the constituents in the very manner for which they are otherwise used and when articles very similar to those constituents are on sale as separate items, the combination is not, in the sense of customs law, an entirety.

54 CCPA at 110.

In *Determined Productions,* the court, referring to the above proposition, found that Snoopy and Woodstock toy figures, although designed, packaged, sold and purchased as a unit, were not entireties. It found that "the Snoopy and Woodstock figures before the Court have an independent commercial value and the character and use of the figures are substantially the same whether the figures are used together, individually, or with other merchandise." 10 CIT at 133. The court concluded that the "individual identities of the

figures before the Court are not subordinate to the identity of the unit," and therefore they were not entireties. *Id.*

In the case at bar, although designed, purchased and sold as a unit, this Court holds that the lunch box and beverage flask are properly classified as separate articles of commerce, not as entireties. The characteristics and uses of the lunch box and beverage flask are substantially the same, whether they are used together or apart. The lunch box is chiefly used by pre-teenage children to carry or store food until it is ready to be consumed. The beverage flask is used both as a storage and serving container. There is nothing inherent in either part of the combined merchandise that requires it to be purchased, sold, or used as a unit. Each part will perform its function completely without the other. Indeed, there are some materials in the record indicating that the lunch box and beverage flask are sometimes marketed and sold independently of each other. *See* Plaintiff's Motion for Summary Judgment (Affidavit of Eduardo R. Miranda at paragraphs 16 and 19 and annexed brochures); Transcript of Oral Argument at 35–37.

Furthermore, in order for the lunch box and beverage flask combination to be used, the nature of its design requires its disassembly. The lunch box must be opened to retrieve whatever food is stored therein, and the beverage flask must be removed from the lunch box to gain access to the beverage or food stored therein. However, each component of the combined merchandise is used in the manner for which it is otherwise used individually; the lunch box for carrying and storing food or beverages; the beverage flask for storing and serving food or beverages. There is no new product or entity created by their association and neither becomes subordinated to the other by virtue of its association. Indeed, even though the beverage flask is designed to fit into a rudimentary, barely noticeable slot in the lunch box, there is no reason, other than convenience, why the flask need be carried in that manner. It would perform its function, storing, serving and maintaining beverage temperature, regardless of its placement within or without the lunch box.

Having determined that the articles were improperly classified as entireties, the Court must examine the items separately to see if their classification as luggage under TSUS item 706.62 was correct.[2]

---

[2]Aladdin makes the argument that the lunch box and beverage flask are susceptible of classification under both Customs' classification as luggage, item 706.62, TSUS, and Aladdin's claimed classification, item A772.15, TSUS. Aladdin claims the issue of which TSUS item is appropriate under the customs laws is a classic case of relative specificity, and pivotal to this Court's decision. Aladdin contends that classification of the imported merchandise as plastic articles chiefly used for preparing, serving, or storing food or beverages under item A772.15, TSUS, would be more specific than Customs' classification of the lunch box as luggage.

The government argues that the merchandise is not susceptible of classification under both provisions thereby obviating the need to apply the relatively specificity rule. The government also takes the position that even if both provisions were equally applicable, TSUS item 706.62 is more specific.

The rule of relative specificity flows from General Interpretative Rule 10(c) of the Tariff Schedules which provides that "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it * * *." It is axiomatic that such rules of construction do not apply where Congress has expressed a contrary intention that the merchandise be classified under a specific provision. *United States* v. *American Import Co.,* 26 CCPA 283, C.A.D. 28 (1938).

## 1. *The Lunch Box*

A careful examination of the statutory definition of luggage in headnote 2(a) of TSUS Schedule 7, Part 1, Subpart D, TSUS item 706.62 and the case law leads this Court to the conclusion that the lunch box was properly classified by Customs.[3]

Headnote 2(a)(i) provides that the term luggage encompasses, *inter alia,* travel goods such as trunks, overnight bags, "traveling bags, knapsacks, kitbags, * * * and like articles designed to contain clothing or other personal effects during travel." Headnote 2(a)(ii) provides that the term luggage covers, *inter alia,* brief cases, school bags, golf bags, camera cases and "like containers and cases designed to be carried with the person * * *."

Applying the *ejusdem generis* rule of construction,[4] headnote 2(a)(i) was construed by the Customs Court in *Adolco Trading Co.* v. *United States,* 71 Cust. Ct. 145, 154, C.D. 4487 (1973) to encompass "all articles customarily used for travel, which can be closed and usually locked." The court held that the plastic shopping bags in issue were not classifiable as luggage. In reaching that conclusion, the court appeared to rely upon a relatively narrow conception of the term "travel" as contained in headnote 2(a)(i). This conception of travel focused on journeys utilizing trains, buses and airplanes during which luggage would ordinarily be stowed or checked. It would appear that items falling under this interpretation of travel would need to be sturdy enough to withstand rough handling. The court stated:

> The bags before the court cannot be locked or even closed securely. They could not be handled as checked baggage on trains, buses or airplanes, because the articles in them would fall out when given normal baggage handling. For the same reason, they could not be placed in overhead racks or airplane lockers. Moreover, people do not ordinarily carry personal clothing in open bags where it can become soiled or is in danger of falling out. The instant bags are not designed or suitable for

---

As shown below, because the Court determines that neither the lunch box nor the beverage flask is susceptible of classification under both the luggage and plastic provisions, the rule of relative specificity does not apply in this case.

[3]Schedule 7, part 1, subpart D, headnote 2(a) provides:

2. For the purposes of the tariff schedules—

    (a) the term "*luggage*" covers—

        (i) travel goods, such as trunks, hand trunks, lockers, valises, satchels, suitcases, wardrobe cases, overnight bags, pullman bags, gladstone bags, traveling bags, knapsacks, kitbags, haversacks, duffle bags, and like articles designed to contain clothing or other personal effects during travel;

        (ii) brief cases, portfolios, school bags, photographic equipment bags, golf bags, camera cases, binocular cases, gun cases, occupational luggage cases (physicians', sample, etc.), and like containers and cases designed to be carried with the person, except handbags as defined herein.

[4]The doctrine of *ejusdem generis* has been described as follows:

    [w]here there is an enumeration of specific words of description * * * followed by a general term * * * the rule of *ejusdem generis* aids in statutory interpretation * * *. Under the rule of *ejusdem generis,* which means "of the same kind", where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified.

*DRI Industries, Inc.* v. *United States,* 11 CIT 97, 657 F. Supp. 528, 532, *aff'd,* 832 F.2d 155 (Fed. Cir. 1987) (quoting *Izod Outerwear* v. *United States,* 9 CIT 309, 313 (1985) (citations omitted)). *See also, Supermarket Systems, U.S., Inc.* v. *United States,* 13 CIT 907, Slip Op. 89–153 (Oct. 27, 1989) at 14.

carrying clothing or personal effects during travel, and according to the evidence presented are rarely so used.

*Id.*

Subsequent to *Adolco,* Judge Ford of the Customs Court examined headnote 2(a)(i) and the Tariff Classification Study and determined that insulated plastic picnic bags with handles and zippered enclosures fell under the statutory definition of luggage. *Prepac, Inc.* v. *United States,* 78 Cust. Ct. 108, C.D. 4694, 433 F. Supp. 339 (1977). The pertinent part of the Tariff Classification Study relied upon by the court in *Prepac* states:

> This subpart would cover all luggage, handbags, and flat goods of whatever material composed, except cases for musical instruments * * *, cases suitable for pipes or for cigar or cigarette holders * * *, and cases, purses, or boxes of precious metals or precious stones * * *. The luggage and handbags covered here may be fitted with bottle, dining, drinking, manicure, sewing, traveling or similar sets of a type used for convenience while traveling * * *.

Tariff Classification Study, Schedule 7, part 1, subpart D, at 47 (1960) (cross-references omitted).

In reaching its holding the court interpreted the above quoted language as expressive of legislative intent that the plastic picnic bags be classified as luggage. In doing so, the court in *Prepac* appeared to adopt a more expanded definition of travel than the court in *Adolco.* The picnic bags in *Prepac* were found to be used for the convenience of the user while traveling, which included carrying food in an automobile or for picnic purposes. 78 Cust. Ct. at 111, 433 F. Supp. at 341. The court stated the basis for its holding:

> The utilization of the language [in the Tariff Classification Study] to include bags fitted for dining and drinking is indicative of an intent to include within this subpart luggage or travel goods used for those purposes. The record herein is incontroverted with respect to the use of the imported picnic bags, viz., to carry food and beverages on trips. Accordingly, it is clear that the intent in enacting this provision was to encompass such travel goods as are primarily used for travel which are utilized for food and beverages.

78 Cust. Ct. at 112–13, 433 F. Supp. at 342. In coming to this conclusion the court determined that food and beverages were "personal effects" within the meaning of headnote 2(a)(i).

Applying the *ejusdem generis* rule of construction to headnote 2(a)(ii), this Court in *DRI Industries,* 11 CIT at 103, 657 F. Supp. at 533, found that a tool chest, designed to be carried with the person "from place to place or job to job, around or outside the home," was *ejusdem generis* with the exemplars named in headnote 2(a)(ii). The court determined that headnote 2(a)(ii), unlike headnote 2(a)(i), did not include a travel requirement. The court also determined that whether an article was designed to be carried with the person,

while pertinent, was not dispositive of the inquiry, as the article must also be *ejusdem generis* with the items enumerated. The court concluded that the "exemplars listed in [headnote] 2(a)(ii) represent a catergory [sic] of containers or cases which are designed to store, organize, and protect those contents from which the containers derive their name." 11 CIT at 102, 657 F. Supp. at 532.

In the case at bar, regardless of whether a child carrying his or her lunch to school is considered to be engaged in "travel" under headnote 2(a)(i), which under case precedent is plausible, the lunch box was clearly intended to be covered by the provision for luggage under TSUS item 706.62. The lunch box is *ejusdem generis* with the enumerated articles in headnote 2(a)(ii). Like the exemplars listed in the headnote, the lunch or "sandwich" box is designed to store, organize and protect the lunch (food or beverages) or the sandwich contained within, from which the container derives its name. Furthermore, like the exemplars in headnote 2(a)(ii), the lunch box is designed to be carried with the person.

Aladdin's description of the merchandise, along with the promotional material submitted with the summary judgment motion papers and affidavit in support, clearly indicate that the lunch box is intended to be carried with the person through use of the carrying strap. The promotional literature shows two children carrying lunch boxes, one with the box suspended from a carrying strap draped over the shoulder, the other with the strap grasped in hand. Since there is no material disagreement that the lunch box is chiefly used to carry or store food, it was properly classified as luggage under TSUS item 706.62.

## 2. *The Beverage Flask*

The parties have stipulated that the beverage flask is chiefly used by pre-teenage children as a storing and serving container for beverages and food. TSUS item A772.15 provides for plastic articles chiefly used for preparing, serving, or storing food and beverages. Neither party has made an argument that the beverage flask alone is susceptible of classification under the provision for luggage. Nor would such an argument be persuasive to this Court. The beverage flask is not *ejusdem generis* with either of the headnotes. It is chiefly used to store and serve food and beverages. It is not designed to contain clothing or personal effects during travel and is manifestly dissimilar to the items enumerated in headnote 2(a)(i), such as duffle bags, knapsacks, kitbags, trunks and valises. Nor is the beverage flask like the articles enumerated in headnote 2(a)(ii) such as golf bags, camera cases and occupational luggage cases. The beverage flask, though capable of being carried with the person, cannot be said to be so designed.

Although no evidence was presented to this Court, at oral argument Aladdin's counsel asserted that when the beverage flasks had been imported separately from the lunch boxes, the beverage flasks were classified under TSUS item A772.15 for plastic articles chiefly used for preparing, serving, or storing food and beverages. This comports with this Court's opinion that the beverage flask is properly classified under TSUS item A772.15 as it is the TSUS item which best describes it. On the basis of the foregoing, the Court concludes that Aladdin has overcome the presumption of correctness accorded Customs' classification.

## CONCLUSION

On the basis of the arguments of the parties, the facts as stipulated by the parties, the tariff schedules, case law and rules of construction, this Court determines that there are no genuine material facts in issue and that summary judgment is appropriate. Furthermore, this Court holds that Aladdin has overcome the presumption of correctness attaching to the government's classification of the merchandise as entireties and the beverage flask as luggage under TSUS item 706.62, but Aladdin has not overcome the presumption concerning the lunch box. Therefore, Aladdin's motion for summary judgment is granted in part, to the extent of reclassifying the beverage flask under TSUS item A772.15 and refunding any excess Customs duties. Aladdin's motion for summary judgment is denied as to the request for reclassification of the lunch box. The government's motion for summary judgment is granted to the extent of upholding its classification of the lunch box as luggage under TSUS item 706.62 and is otherwise denied in all respects.