TANDON CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 89–12–00658

(Dated October 29, 1992)

*Stein, Shostak, Shostak & O'Hara* (*S. Richard Shostak* and *Marjorie Shostak*), for plaintiff.

*Stuart M. Gerson,* Assistant Attorney General, *Joseph I.* Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Carla Garcia-Benitez*) for defendant.

### MEMORANDUM OPINION AND ORDER

MUSGRAVE, *Judge:* This case is before the Court on cross-motions for summary judgment. Plaintiff challenges the Customs Service's decision

to deny its claims for substitution same condition drawback refunds of duties on entries of flexible disk drives. The dispositive issue is whether the substituted disk drives, all of which contained a particular switch made by the OMRON Corporation, were fungible with the imported disk drives, some of which contained switches made by a different manufacturer. Despite the assertions of both parties to the contrary, the Court finds that a genuine issue of fact remains as to the fungibility of the disk drives, and denies both motions for summary judgment. *Rule 56(c)*.

Tandon submits the affidavits of the following people, who were employed in the noted capacities at the relevant times: Ng Han-Lim, Production Manager in charge of manufacturing the subject disk drives; Virender Desraj Luthra, Manufacturing Manager in Singapore; and James W. Schultz, Customer Service Manager. The affidavits may be summarized as follows.

Tandon manufactured model TM100-2 disk drives, including the subject merchandise, in Taiwan. Beginning in late 1983, Tandon began making the TM100-2 disk drives using "track zero" switches made by OMRON as well as another supplier. In June 1984, IBM began to question the use of the OMRON switch. *Declaration of Ng Han-Lim*, at 3. On July 4, 1984, IBM notified Tandon to place the OMRON switch "on hold" until further notice. *Declaration of Ng Han-Lim*, Document 1. The July 4 notice states that IBM had experienced a failure rate of 25% out of a sample of 1000 OMRON switches. *Id.*

On July 9,1984, after testing the OMRON switch "extensively" and finding "no major problem with it," IBM released the hold and authorized Tandon to continue using the switch in the disk drives. *Declaration of Ng Han-Lim*, Declaration Document 2.

IBM renewed its complaints about the OMRON switch in August and September of 1984. Tandon performed tests on the switches, which were successful, and informed IBM. *Declaration of Ng Han-Lim*, at 5. Nevertheless, in October, IBM required Tandon to replace all of the OMRON switches. An IBM employee stated in a letter,

> I think we are in agreement now, that there exists a problem with the OMRON Track '0' switch sticking intermittently, and that the problem can be isolated to a vintage of Tandon Drives(s) manufactured during a March and April 1984 timeframe. Failure analysis data presented during our October 16th, 1984 meeting supports this position. I think we are in further agreement that Drive(s) with Omron Switch(s) [sic] manufactured during timeframes other than March and Apirl [sic] 1984 do not exhibit this problem.

*Declaration of James W. Schultz,* Declaration Document 1. Tandon then sent a team of employees to sort all of the disk drives in IBM's inventory and take those containing OMRON switches from IBM to replace the OMRON switch. The sorting was done by simple visual inspection, which did not require disassembly or modification of the drives. *Decla-*

*ration of James W. Schultz,* at 1. After sorting, the disk drives were exported to Singapore for replacement of the switch. *Id.* at 2.

Not all of the disk drives sold to IBM at the time contained the OMRON switch, but no record survives of what proportion or what specific shipments contained the OMRON switch. *Declaration of Virender Desraj Luthra,* at 2.

Despite IBM's complaints and the statement that Tandon was "in agreement" about the disk drives, one of the Tandon declarants "remain[s] unconvinced that the issue of the track zero switch justified a return of [the] products." *Declaration of Ng Han-Lim,* at 6. Tandon made the same disk drives for other customers during the same period, and received no other complaints. *Id.* at 6; *Declaration of Virender Desraj Luthra,* at 2; *Declaration of James W. Schultz,* at 3.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Rule 56(d).* All ambiguities are to be resolved and all reasonable inferences drawn in favor of the party opposing summary judgment. *Carter Footwear v. United States,* 10 CIT 618, 620 (1986). If there remains a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant, summary judgment must be denied. *Bantam Travelware v. United States,* 11 CIT 137, 139 (1987).

The leading judicial construction of 19 U.S.C. § 1313(j)(2) is *Guess? Inc. v. United States,* 9 Fed. Cir. (T) 111, 944 F.2d 855 (1991). Guess exported denim apparel bearing labels identifying it as made in the United States, while importing allegedly fungible articles bearing labels indicating a different national origin. The motion court granted summary judgment based on a letter from the import manager of Guess to the Customs Service which stated that "domestically produced garments are the only one [sic] shipped overseas as our foreign customers demand the Made in U.S. Label * * *." *Guess? Inc. v. United States,* 14 CIT 770, 752 F. Supp. 463, 465 (1990). Such a commercial preference, the Court held, destroys fungibility. *Id.* 14 CIT at 773, 752 F. Supp. at 467.

The Court of Appeals reversed, noting that the motion court had properly parsed the word "fungible," but finding that the "existence and scope of foreign customers' preference" for the merchandise was not undisputed. *Guess?,* 9 Fed. Cir. (T) at 113, 944 F.2d at 857. The regulation implementing § 1313(j)(2) defines fungible merchandise as "merchandise which for commercial purposes is identical and interchangeable in all situations." 19 C.F.R. § 191.2(1) (1991). After reviewing the legislative history of § 1313, the Court held that the regulation is a reasonable construction of the statute and is entitled to deference. *Guess?,* 9 Fed. Cir. (T) at 114, 944 F.2d at 858.

The Court of Appeals found that affidavits before the motion court implied that the U.S.-made and foreign-made merchandise were fungible even among foreign customers, despite the letter to the Customs Service

and statements that Guess believed some foreign customers may prefer the "Made in the U.S.A." label. The Appellate Court concluded, "*Why* Guess exports only U.S.-made jeans is not controlling; whether some foreign customers demand them because of their labels is." *Id.* 9 Fed. Cir. (T) at 115, 944 F.2d at 858.

Looking first to plaintiff's motion for summary judgment, the Court finds that a reasonable trier of fact could return a verdict against the plaintiffs. Specifically, viewing the evidence in the light most favorable to the government, a reasonable mind could conclude from the affidavits presented that the disk drives containing the OMRON switch were defective. Moreover, the evidence so viewed supports the inference that the exported drives not only failed more often than similar drives not containing OMRON switches, but more often than similar drives containing OMRON switches that were not made during March and April 1984. Under these facts, the exported drives would not be commercially interchangeable even with disk drives containing only OMRON switches that were not made in March and April 1984. Accordingly, plaintiffs motion for summary judgment is denied.

The government's cross motion is more problematic. Viewing the evidence in the light most favorable to the plaintiff, the Court finds that a reasonable factfinder could determine that the exported disk drives did perform as well as the substituted drives. A reasonable mind could conclude from the inconsistencies in test results reported by IBM and Tandon that IBM's complaints were a conservative reaction to the vagaries of imperfect testing methods, and Tandon's exportation to "fix" the drives were an accommodation to an important customer.

If, as might be surmised, the exported drives were functionally indistinguishable from the substituted merchandise and acceptable to all customers for such merchandise other than IBM, the situation closely resembles an example set forth by the motion court in *Guess?:*

> Guess poses a hypothetical situation in which an exporter who has been receiving drawback for a certain type of substituted merchandise can lose it suddenly because a single customer develops a preference for some aspect of the merchandise which had not theretofore been considered relevant or important. With respect to this specter of future confusion, the Court notes only that it is not a predictable consequence of the holding in this opinion as applied to the facts of this case. Here, there was nothing sudden, unexpected, ephemeral, or fugitive about the customer preference for the garments with the labels indicating that they were made in the United States. This was a standardized response made by Guess to the general demands of its customers. * * *

*Guess?,* 14 CIT at 774, 752 F. Supp. at 467–68.

The Court of Appeals emphasized that the regulation required that fungible merchandise is *"for commercial purposes identical* and interchangeable in *all* situations." *Guess?,* 9 Fed. Cir. (T) at 114, 944 F.2d at 858. While this standard seems to imply that any customer preference defeats fungibility, the Court also indicated that the scope of customer preference, as well as its existence, is relevant to the inquiry. *Guess?,* 9 Fed. Cir. (T) at 113, 944 F.2d at 857. The hypothetical question of fungibility in the face of an ephemeral customer preference is thus not clearly resolved by the Federal Circuit opinion.

Viewed in this light, the affidavits and other documents before the Court do not dictate an answer to the decisive question of fungibility. A fuller development of facts is necessary. Such facts might include further details concerning IBM's request that Tandon take possession of the disk drives, whether the drives were fully acceptable to other customers in their exported form, what portion of the market for these drives IBM constituted, and the fate of other OMRON equipped drives in the market. The government's motion for summary judgment is therefore denied.