**GUESS? INCORPORATED, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 88–09–00707.**

United States Court of International Trade.

Nov. 26, 1990.

---

Dickstein, Shapiro & Morin, Joel Davidow, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Office, Nancy M. Frieden, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge:

This case is before the court on cross motions for summary judgment, on which the Court heard oral argument. The sole question is whether or not the United States Customs Service was correct to deny a refund of Customs duty otherwise known as "drawback" to Guess, Inc. Guess applied for drawback when it exported certain cotton denim wearing apparel from the United States. This dispute involves a 1984 amendment to the law governing drawback which, for the first time, provided drawback upon the exportation of merchandise which was not the self-same merchandise upon which duty had been paid. The main issue in this case is whether the merchandise exported by plaintiff Guess satisfied the statutory conditions for merchandise seeking the benefits of this new form of drawback. In terms of the relevant statute, which will shortly be discussed, the issue is whether the exported

merchandise and the imported merchandise were fungible.

The controversy centers on the fact that although the merchandise exported from the United States was, in almost all respects, identical to that which was imported, the labels identifying the country of manufacture were different. Those garments exported from the United States bore labels identifying them as made in the United States and the court must explore the legal consequences of that labeling in the circumstances of this case.

Between December 1, 1986 and December 30, 1987, plaintiff Guess exported various cotton denim wearing apparel through the port of Los Angeles, California. Thereafter, Guess filed 24 drawback entries seeking drawback under 19 U.S.C. § 1313(j)(2), as amended by § 202 of the Trade and Tariff Act of 1984, Pub.L. 98–573. The Customs Service liquidated the entries and denied the drawback claims on the ground that the merchandise involved did not qualify for such treatment under the law. The government relied on the fact that plaintiff's foreign customers demanded garments which showed that they were made in the United States. This state of affairs was brought to the attention of the Customs Service in a letter from the import manager of plaintiff Guess which stated that "... domestically produced garments are the only one shipped overseas as our foreign customers demand the Made in U.S. Label...."

Plaintiff Guess argues that labeling should not have a controlling effect on the question of whether or not the U.S. made goods met the statutory requirements. According to Guess, the fungibility of the goods in a general commercial or contractual sense should suffice to bring them within the coverage of the statute. The government takes the position that the existence of a customer preference for garments with a "Made in the U.S." label destroys the fungibility between those garments and garments bearing labels indicating that they were manufactured elsewhere, even though all other physical elements of the garments may be identical.

The Court begins by examining the plain language of § 313(j) of the Tariff Act of 1930 as amended in 1984 by Pl. 98–573, § 201 (19 U.S.C. § 1313(j)(2)). The text of that law reads in part as follows:

(j) Same condition drawback

\*   \*   \*   \*   \*   \*

(2) If there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law because of its importation, any other merchandise (whether imported or domestic) that—

(A) is fungible with such imported merchandise;

(B) is, before the close of the three-year period beginning, on the date of importation of the imported merchandise, either exported or destroyed under Customs supervision;

(C) before such exportation or destruction—

(i) is not used within the United States, and

(ii) is in the possession of the party claiming drawback under this paragraph; and

(D) is in the same condition at the time of exportation or destruction as was the imported merchandise at the time of its importation; then upon the exportation or destruction of such other merchandise the amount of each such duty, tax, and fee paid regarding the imported merchandise shall be refunded as drawback, but in no case may the total drawback on the imported merchandise, whether available under this paragraph or any other provision of law or any combination thereof, exceed 99 percent of that duty, tax, or fee.

(4) The performing of incidental operations (including, but not limited to, testing, cleaning, repacking, and inspecting) on—

\*   \*   \*   \*   \*   \*

(B) The merchandise of the same kind and quality in cases to which paragraph (2) applies, that does not amount to manufacture or production for drawback purposes under the preced-

ing provisions of this section shall not be treated as a use of that merchandise for purposes of applying paragraph (1)(B) or (2)(C).

\* \* \* \* \* \*

The Court notes first that the provision under consideration is a recent refinement of a provision for remission of duties which has been in effect, one way or another, since 1789. Section 2 of the Act of July 4, 1789, ch. II, 1 Stat. 24 provided that if merchandise was exported within twelve months after importation, all but 1% of the duties paid were to be returned. Various forms of drawback have remained in the tariff laws to the present day. The original form of the section under consideration here, when it was first included in the Tariff Act of 1930, 46 Stat. 693, limited the benefits of drawback to merchandise which, after importation, had been manufactured in some way in the United States. In 1980, Congress removed that limitation by amending the Tariff Act of 1930 to authorize "same condition drawback," namely, the drawback of duty paid upon imported merchandise which was subsequently exported without being manufactured. P.L. 96–609, § 201(a), 94 Stat. 3560, adding subsection (j) to § 313 of the Act, 19 U.S.C. § 1313(j). Finally, in 1984, Congress allowed drawback for the exportation of merchandise which was not the actual merchandise upon which duty had been paid. This new concept is called "substitution same condition drawback" and is now encompassed in 19 U.S.C. § 1313(j)(2). The law states that the exported merchandise must be "fungible" with the imported merchandise on which duty was paid and for which drawback is sought.

Pursuant to the authority granted to him in 19 U.S.C. § 1313(j)(1) the Secretary of Treasury has issued regulations governing the operation of the provisions for same conditions substitution drawback which define fungible merchandise as "merchandise which for commercial purposes is identical and interchangeable in all situations." 19 C.F.R. § 191.2(b)(1).

■ The Court undertakes its interpretation of this statute with a number of basic factors in mind. First is the desirability of looking directly to the language of the statute in order to ascertain the meaning of words in dispute. *North Dakota v. United States*, 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983); *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Second, is the basic consideration that drawback is closer to a privilege than a right and all conditions of the statutes and regulations must ordinarily be established by a claimant. *Swan & Finch Co. v. United States*, 190 U.S. 143, 146–147, 23 S.Ct. 702, 703–704, 47 L.Ed. 984 (1903). The Supreme Court has stated that drawback is a form of exemption from the operation of the system of tariff duties on imports and that a claim for drawback "is within the general principle that exemptions must be strictly construed, and doubt must be resolved against the one asserting the exemption." *United States v. Allen*, 163 U.S. 499, 504, 16 S.Ct. 1071, 1073, 41 L.Ed. 242 (1896).

"Fungible" is one of those words in whose definition reference is often made to a legal standard under which one thing may be found acceptable as a substitution for another. Here, the substitution is that of the exported merchandise for the imported merchandise. The question then becomes one of finding the level of "acceptability" which the law requires for such substitution. For a number of reasons the Court reaches the conclusion that the standard adopted by the regulations, namely, that the merchandise be identical for commercial purposes, is correct.

■ The Court is of the opinion that in allowing substitution of other merchandise for the first time, the choice of the word "fungible" indicates an intention by Congress to identify merchandise which stands in the place of the imported merchandise in all respects. This means that it must stand in the place of the imported merchandise, *but must not be more desirable than*, the imported merchandise. The admission by plaintiff's import manager that only domestically produced garments are exported because foreign customers demand a "Made in U.S. Label" is conclusive. It would be

unreasonable to say that labels are too insignificant to effect the tariff fate of merchandise when they have a demonstrated effect on the customers' choice. Of course the converse of such a rule, namely, a presumption that labeling always destroys fungibility would also be unreasonable. The focus of attention here is a label for which a commercial preference has been demonstrated. It is perfectly logical to find that such a preference destroys fungibility when the desideratum is an exemption from the payment of tariff duty. In the opinion of the Court, such a finding is reasonable and lawful.

■ We are not dealing here with a question of whether a party has satisfied a commercial contract. If that were the case there might be plausibility to plaintiff's argument that the standards of the Uniform Commercial Code [U.C.C.] would dictate that the substituted merchandise conformed to a sales contract. If this was a case in which the purchasers from Guess had rejected merchandise bearing a "Made in Hong Kong" label it would seem that their rejection would not be justified under the standards of the U.C.C. See, U.C.C. § 2–601 (defining a buyer's right to reject goods) in conjunction with § 1–201(17) (which defines "fungible," *inter alia*, in terms of "usage of trade."). Here, however, the standard does not arise from ordinary commercial transactions but rather from a legislative exception to the payment of import duties. For the purposes of interpreting the Tariff laws, the meanings and variations developed in other areas of the law cannot be determinative. *Amersham Corp. v. United States*, 5 CIT 49, 56, 564 F.Supp. 813 (1983), *aff'd* 728 F.2d 1453 (Fed.Cir.1984).

■ It is the opinion of the Court that Congress did not intend to make merchandise eligible for drawback with the same flexibility or openness with which merchandise is considered fungible in general commercial litigation. In fact, the rather terse explanation in the legislative history of the 1984 amendment states only that the purpose of the new provision was "to expedite merchandise handling and inventory control." 98th Cong., 2d Sess., Cong. and Admin. News at 5023.

■ There is no support for plaintiff's contention that the 1984 amendment to the drawback law was intended to be a further form of encouragement for the production of articles in the United States and their exportation. Those judicial opinions which spoke of drawback as encouraging American manufacture for export were speaking of instances in which the imported product was processed in the United States and then exported. See for example, *United States v. International Paint Co., Inc.*, 35 CCPA 87, 90 (1948). That situation can be viewed as one in which the only consequence of allowing drawback on the importation is an encouragement of exportation. On the other hand, when substitution drawback theoretically allows imported merchandise to satisfy demand in the United States that is a much more complicated situation than a simple encouragement of U.S. manufacture for exportation. For the courts to consider this in the same category as the earlier consequences of drawback would be disingenuous. In any event, even if substitution drawback had an indisputable salutary effect on U.S. manufactures it would still be an exception to tariff duties and subject to the terms and conditions established by law. Absent some indication that Congress intended that the term "fungible" be given an expansive meaning the meaning required by this statutory context must control.

Guess has also argued that to make customer preference a controlling factor raises potential problems of unpredictability and excessive flux in the administration of the law. Guess poses a hypothetical situation in which an exporter who has been receiving drawback for a certain type of substituted merchandise can lose it suddenly because a single customer develops a preference for some aspect of the merchandise which had not theretofore been considered relevant or important. With respect to this specter of future confusion, the Court notes only that it is not a predictable consequence of the holding in this opinion as applied to the facts of this case. Here,

there was nothing sudden, unexpected, ephemeral, or fugitive about the customer preference for the garments with labels indicating that they were made in the United States. This was a standardized response made by Guess to the general demands of its customers, and as such, it supports the conclusion that the exported merchandise was distinct from the imported merchandise in a sustained and established manner.

For the reasons given above the Court concludes that the government was correct to deny drawback to this exported merchandise on the ground that it was not fungible with the imported merchandise on which duty had been paid. It is therefore ORDERED, that defendant's motion for summary judgment be, and the same hereby is granted and, consistent with this result, it is further ORDERED that plaintiff's motion for summary judgment is denied.