**GUESS? INCORPORATED,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–**
**Appellee.**

**No. 91–1145.**

United States Court of Appeals,
Federal Circuit.

Sept. 11, 1991.

Joel Davidow, Dickstein, Shapiro & Morin, Washington, D.C., argued, for plaintiff-appellant. With him on the brief was Jeffrey W. Brennan.

Nancy M. Frieden, Commercial Litigation Branch, Dept. of Justice, New York City argued, for defendant-appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office.

Before MAYER, MICHEL and PLAGER, Circuit Judges.

MAYER, Circuit Judge.

OPINION

Guess? Incorporated (Guess) appeals the judgment of the United States Court of International Trade upholding by summary judgment the United States Customs Service's (Customs') decision to deny substitution same condition drawback under 19 U.S.C. § 1313(j)(2) (1988). *Guess?, Inc. v.*

*United States*, 752 F.Supp. 463 (Ct. Int'l Trade 1990). We vacate and remand.

## Background

Guess manufactures cotton denim wearing apparel—jeans—in both the United States and Hong Kong. When it imports Hong Kong-made jeans to the United States, it must pay duty. If within three years it subsequently exports (or destroys) unused jeans, "whether imported or domestic," that are "fungible" with and in the same condition as the imported jeans, it is statutorily entitled to "drawback"—a refund of the duty paid upon entry.* *See* 19 U.S.C. § 1313(j)(2) (1988). "Fungible merchandise" is defined by regulation as "merchandise which for commercial purposes is identical and interchangeable in all situations." 19 C.F.R. § 191.2(1) (1990).

Although Guess' U.S.-made and Hong Kong-made jeans are physically identical except for labels indicating country of origin, Guess has a policy of supplying only U.S.-made goods to its foreign customers. It exported the U.S.-made jeans on which it based the instant applications for drawback between December of 1986 and January of 1987. Customs denied the applications in February of 1988 in reliance on an admission by Guess' import manager, Drexel Watson, that "domestically produced garments are the only ones shipped overseas as our foreign customers demand the Made in U.S. Label[.] [S]uch is not the case domestically where either garment may be shipped." In Customs' view, foreign customers' preference for U.S.-made jeans destroyed fungibility.

Guess filed suit to dispute the existence of a foreign customer preference affecting fungibility. It submitted the affidavits of three persons who it believes controvert Watson: Thall, a Guess employee; Sarabia, Guess general counsel; and Melendez, vice president of an international trade facilitator. Thall avers that, whereas certain international trade facilitators "export

Guess products made in the U.S. and Guess products of the same model made in Hong Kong together and intermixed, without any differentiation and without any lack of acceptance,"

[i]t is Guess company policy on export orders to substitute U.S. made goods for any Hong Kong made goods of the same style numbers, because Guess wishes to strengthen its ability to continue to make products in the U.S. and export from the U.S. and because Guess believes that some of its customers in some foreign countries may prefer the "Made in the U.S.A." label for political or commercial reasons when purchasing from Guess. *The U.S. made goods* are physically identical to the imported goods and *have always been treated as fully commercially acceptable in all situations everywhere* when exported in lieu of exporting the imported goods.

*There is no custom of the trade* in the cotton denim apparel business *that U.S. made products and identical,* authentic, same brand *non-U.S. made products are not equally acceptable in fulfillment of purchase contracts* ordering cotton denim products by brand and model number. [Emphasis added].

Both Sarabia and Melendez corroborate the latter paragraph. Melendez adds: "I am aware that Guess jeans has a policy of providing only its U.S.-made jeans in its direct sales to foreign customers. I am also aware that Guess' policy is not followed by many other firms in the industry, and that various firms have altered their production or sales policies in this regard from time to time."

The trial court relied wholly on Watson's statement and upheld Customs' determination. 752 F.Supp. at 466. It viewed the statement as a "conclusive" "admission," *id.*, establishing the labels' "demonstrated effect on the customers' choice," *id.* at 467. It rejected Guess' reliance on the Uniform Commercial Code definition of fungible—

---

* "Drawback" means a refund or remission, in whole or in part, of a customs duty, internal revenue tax, or fee lawfully assessed or collected because of a particular use made of the

merchandise on which the duty, tax, or fee was assessed or collected.

19 C.F.R. § 191.2(a) (1990).

"for the purposes of interpreting the Tariff laws, the meanings and variations developed in other areas of the law cannot be determinative," *id.*—and interpreted the regulatory definition of fungible to require that the exported (or destroyed) merchandise *"not be more desirable than"* the imported merchandise, *id.* at 466. It concluded that Guess' policy of shipping only U.S.-made goods overseas "was a standardized response made by Guess to the general demands of its customers, and as such, it supports the conclusion that the exported merchandise was distinct from the imported merchandise in a sustained and established manner." *Id.* at 468. Accordingly, it ruled in favor of the government.

### Discussion

■ We review the Court of International Trade's summary judgment for correctness as a matter of law, deciding *de novo* the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist. *E.M. Chemicals v. United States,* 920 F.2d 910, 912 (Fed.Cir.1990); *see C.R. Bard, Inc. v. Advanced Cardiovascular Sys.,* 911 F.2d 670, 673 (Fed.Cir.1990). We think the court correctly parsed the word "fungible" but disagree that the existence and scope of foreign customers' preference for U.S.-made Guess jeans is undisputed.

### A.

■ The substitution same condition drawback provision reads:

(2) If there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law because of its importation, any other merchandise (whether imported or domestic) that—

(A) is *fungible* with such imported merchandise;

(B) is, before the close of the three-year period beginning on the date of importation of the imported merchandise, either exported or destroyed under Customs supervision;

(C) before such exportation or destruction—

(i) is not used within the United States, and

(ii) is in the possession of the party claiming drawback under this paragraph; and

(D) is in the same condition at the time of exportation or destruction as was the imported merchandise at the time of its importation;

then upon the exportation or destruction of such other merchandise the amount of each such duty, tax, and fee paid regarding the imported merchandise shall be refunded as drawback, but in no case may the total drawback on the imported merchandise, whether available under this paragraph or any other provision of law or any combination thereof, exceed 99 percent of that duty, tax, or fee.

19 U.S.C. § 1313(j)(2) (emphasis added). Only requirement (A) is disputed here: is merchandise, physically identical except for labeling indicating country of origin, "fungible" within the meaning of the statute?

While the statute itself does not define fungible, its legislative history and implementing regulations do. Congress added section 1313(j)(2) in 1984. Trade and Tariff Act of 1984, Pub.L. No. 98–573, § 202(1), 98 Stat. 2948, 2973 (1984). The House report accompanying the Act explains:

Drawback is provided if the same person requesting drawback, subsequent to importation and within three years of importation of the merchandise, exports from the United States or destroys under Customs supervision *fungible merchandise* (whether imported or domestic) *which is commercially identical to the merchandise imported....*

This legislation provides for the substitution of merchandise *of a commercially identical nature* to expedite merchandise handling and inventory control.... This legislation would clarify the principle of substitution by allowing merchandise *of an identical commercial nature* to be substituted for the merchandise being imported for purposes of drawback as long as the merchandise being exported or destroyed has not been used within the United States.

H.R.Rep. No. 98–1015, 98th Cong., 2d Sess. 64, *reprinted in,* 1984 U.S.Code Cong. & Admin.News 4910, 4960, 5023 (emphasis added). Congress thus equated "fungible" with "commercially identical." Customs' implementing regulation does the same. It defines "fungible merchandise" as "merchandise which *for commercial purposes is identical* and interchangeable in *all* situations." 19 C.F.R. § 191.2(1) (emphasis added). "This means that [the exported or destroyed merchandise] must stand in the place of the imported merchandise, *but must not be more desirable than,* the imported merchandise." 752 F.Supp. at 466.

Since the regulation is a reasonable construction of the statute and is consistent with Congress' intent, it is entitled to deference. *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *Generra Sportswear Co. v. United States,* 905 F.2d 377, 379 (Fed.Cir.1990). Whether Customs could have defined "fungible" with reference to the Uniform Commercial Code, *see* U.C.C. § 1–201(17), 1 U.L.A. 65 (1989) (" 'fungible' with respect to goods or securities means goods or securities of which any unit is, by nature or usage of trade, the equivalent of any other like unit."), or whether we think adopting the U.C.C. definition in this context would increase predictability and thereby enhance economic efficiency, are both irrelevant. As the trial court correctly recognized, "[w]e are not dealing here with a question of whether a party has satisfied a commercial contract." 752 F.Supp. at 467. We are dealing instead with an exemption from duty, a statutory privilege due only when enumerated conditions are met. "Such a claim is within the general principle that exemptions must be strictly construed, and that doubt must be resolved against the one asserting the exemption." *United States v. Allen,* 163 U.S. 499, 504, 16 S.Ct. 1071, 1073, 41 L.Ed. 242 (1896). *See Swan & Finch Co. v. United States,* 190 U.S. 143, 146, 23 S.Ct. 702, 703, 47 L.Ed. 984 (1903).

### B.

Procedurally, however, Guess is entitled to have both the evidence viewed in the light most favorable to it and all doubts resolved in its favor. *C.R. Bard,* 911 F.2d at 672. When that is done, we think there remains a genuine dispute whether U.S.-made and Hong Kong-made Guess jeans are fungible. Watson's statement that Guess ships *"only"* U.S.-made jeans overseas because foreign customers *"demand the Made in U.S. Label"* might, standing alone, support the trial court's conclusion. But, when the statements of Melendez, Sarabia, and particularly Thall are considered, the calculus changes. All state or fairly imply that U.S.-made and Hong Kong-made jeans are commercially interchangeable, even among foreign customers. Thall's statement that *"Guess believes* that some of its customers in some foreign countries may prefer the 'Made in the U.S.A.' label for political or commercial reasons when purchasing from Guess" is not to the contrary. *Why* Guess exports only U.S.-made jeans is not controlling; whether some foreign customers demand them because of their labels is. The latter, decisive fact is disputed.

### *Conclusion*

Accordingly, the judgment of the Court of International Trade is vacated and the case is remanded.

### COSTS

No costs.

### VACATED AND REMANDED

PLAGER, Circuit Judge, concurring.

I concur in the decision and in the opinion of the court except for the last sentence in the body of the opinion, pertaining to the issue of proving fungibility of the U.S.-made and Hong Kong-made jeans. The opinion states that "[w]hy Guess exports only U.S.-made jeans is not controlling; whether some foreign customers demand them because of their labels is." It is my view that neither Guess's corporate reasoning nor "some" foreign customers' preference controls. Rather, the ultimate decision should be based on a weighing of all

the relevant factors in the case, including the two mentioned above, to decide whether fungibility exists.