WOLFF SHOE CO., Plaintiff–
Cross Appellant,

v.

The **UNITED STATES**, Defendant–
Appellant.

Nos. 97–1049, 97–1079.

United States Court of Appeals,
Federal Circuit.

April 14, 1998.

Steven R. Sosnov, Sosnov & Associates, Norristown, PA, argued, for plaintiff-cross appellant.

James A. Curley, Attorney, Civil Division, Commercial Litigation Branch, International Field Office, U.S. Department of Justice, New York City, argued, for defendant-appellant. With him on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, and Joseph I. Liebman, Attorney In Charge. Of counsel was Edward N. Maurer, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, New York City.

Before SCHALL, Circuit Judge, SKELTON, Senior Circuit Judge, and BRYSON, Circuit Judge.

SCHALL, Circuit Judge.

This appeal arises out of the final assessment of duties due on goods imported into the United States by Wolff Shoe Company ("Wolff"). Wolff brought suit in the United States Court of International Trade seeking a full refund of countervailing duties or, alternatively, a discount in the amount of such duties assessed by the United States Customs Service ("Customs"). The Court of International Trade, on cross-motions for summary judgment, granted partial summary judgment in favor of Wolff, holding that Wolff's entries were liquidated by operation of law at the rate asserted by Wolff on entry and that Wolff thus was entitled to a refund of all countervailing duties that it had paid after entry. *See Wolff Shoe Co. v. United States*, 936 F.Supp. 1084, 1090 (C.I.T.1996). The United States now appeals from the determination that the entries were liqui-dated by operation of law. In addition, Wolff cross-appeals the Court of International Trade's grant of partial summary judgment in favor of the government. The court held that, when liquidation occurs by operation of law, countervailing duties deposited by the importer at the time of entry are included in the amount of duty required to be paid. *See id.* at 1088–89. We conclude that the court erred on the first issue but correctly decided the second issue. Accordingly, we affirm-in-part, reverse-in-part, and remand.

## BACKGROUND

### I.

The countervailing duty laws impose additional duties on imported products which are subsidized by the country of export or manufacture. *See* 19 U.S.C. §§ 1303, 1671 (1982).[1] These additional duties are called "countervailing" duties. They are levied on subsidized imports to offset the unfair competitive advantages created by foreign subsidies.[2] *See United States Steel Group v. United States*, 96 F.3d 1352, 1356 n. 1 (Fed.Cir.1996). Pursuant to 19 U.S.C. § 1671, the United States Department of Commerce ("Commerce") must impose countervailing duties on subsidized imports if it determines that the subject imports are in fact being subsidized, and the International Trade Commission determines that "an industry in the United States—(i) is materially injured, or (ii) is threatened with material injury ... by reason of the [subsidized] imports." After the initial determination, Commerce must perform annual reviews of outstanding countervailing duty orders. *See* 19 U.S.C. § 1675(a) ("At least once during each 12–month period beginning on the anniversary

1. On December 8, 1994, Congress passed the Uruguay Round Agreements Act, Pub.L. No. 103–465, 108 Stat. 4809 ("URAA"), which amended the countervailing duty laws. *See British Steel PLC v. United States*, 127 F.3d 1471, 1473 (Fed.Cir.1997). Our decision is based on the statutory scheme in effect when the events at issue took place, prior to the enactment of the URAA. For simplicity, we will speak in the present tense when referring to the pertinent statutes. Unless otherwise noted, all references are to the 1982 version of the United States Code. That version of the Code controls because the liquidation protested by Wolff occurred in 1986.

2. A subsidy occurs when a foreign government provides (i) "capital, loans, or loan guarantees on terms inconsistent with commercial considerations," (ii) "goods or services at preferential rates," (iii) "funds or forgiveness of debt to cover operating losses sustained by a specific industry," or (iv) the "assumption of any costs or expenses of manufacture, production, or distribution." 19 U.S.C. § 1677(5).

of the date of publication of a countervailing duty order[,]" Commerce shall "review and determine the amount of any net subsidy.").[3] After Commerce performs an annual review under § 1675(a), the statute allows an interested party to seek judicial review of the factual findings and legal conclusions of Commerce in the Court of International Trade. *See* 19 U.S.C. § 1516a(a)(2).

During an annual review by Commerce, "liquidation" of all entries of merchandise subject to the outstanding countervailing duty order is suspended. *See* 19 U.S.C. § 1504(a); *Ambassador Div. of Florsheim Shoe v. United States*, 748 F.2d 1560, 1565, 3 Fed. Cir. (T) 28, 34 (1984). Suspension of liquidation occurs because the annual review scheme established in 19 U.S.C. § 1675(a) would be frustrated unless the final results of the review applied to the entries covered by the review. *See Ambassador*, 748 F.2d at 1565, 3 Fed. Cir. (T) at 34. In addition, during judicial review of a countervailing duty determination, the Court of International Trade "may enjoin the liquidation of some or all entries of merchandise covered by [the countervailing duty order]." 19 U.S.C. § 1516a(c)(2).

Liquidation is "the final computation or ascertainment [by Customs] of the duties or drawback accruing on an entry." 19 C.F.R. § 159.1 (1997).[4] Liquidation of an entry is "final and conclusive upon all persons (including the United States and any officer thereof)."[5] 19 U.S.C. § 1514(a). An importer makes an "entry" by filing documentation with Customs, which enables Customs, among other things, to "assess properly the duties [due] on the merchandise." 19 U.S.C. § 1484. The importer must also deposit estimated duties with Customs. *See* 19 U.S.C. § 1505(a). After the proper documents are filed and the estimated duties are paid, the imported merchandise can pass into the commerce of the United States. *See* 19 U.S.C. § 1490. Subsequently, during liquidation,

Customs will collect any increased duties due or refund any excess of the estimated duties deposited on entry. *See* 19 U.S.C. § 1505(b).

By statute, Customs must complete liquidation of an entry within certain time limits. *See* 19 U.S.C. § 1504. If Customs fails to do so, the entry is "deemed liquidated" (*i.e.,* liquidated by operation of law). *Id.* Pursuant to 19 U.S.C. § 1504(a), merchandise which is not liquidated within one year of its entry is "deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer." The statute includes several exceptions which permit Customs to extend liquidation beyond the one year anniversary of entry. *See* 19 U.S.C. § 1504(b). The statute permits an extension when (1) "information needed for the proper appraisement or classification of the merchandise" is unavailable; (2) "liquidation is suspended as required by statute or court order;" or (3) the importer "requests such extension and shows good cause therefor." *Id.* However, an entry of merchandise which is not liquidated within four years after the date of entry is liquidated by operation of law at the "rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer, ... unless liquidation continues to be suspended by statute or court order." 19 U.S.C. § 1504(d). Additionally, the statute imposes a duty on Customs to notify the importer if liquidation is suspended. *See* 19 U.S.C. § 1504(c); *see also* 19 C.F.R. § 159.12(c).

The deemed-liquidated statute, 19 U.S.C. § 1504, was enacted in 1978. "The prior law had been that Customs might delay liquidation as long as it pleased, and with or without a formal suspension notice." *Ambassador*, 748 F.2d at 1562, 3 Fed. Cir. (T) at 30. In *Ambassador*, we noted that Congress enacted the statute because of "the uncertainty importers were being kept in, often for years, as to whether they might face further

---

**3.** We note that the URAA amended 19 U.S.C. § 1675(a) to provide for an annual review by Commerce "if a request for such a review has been received."

**4.** All references are to the 1997 version of the Code of Federal Regulations, since there has been no substantive change in the pertinent regu-

lations since 1986, the year in which Customs liquidated Wolff's entries.

**5.** There are exceptions to finality in the case of a timely protest or application for judicial review. *See* 19 U.S.C. § 1514(a).

exactions, or when the refunds to which they might be entitled would be paid." *Id.* at 1562–63, 748 F.2d 1560, 3 Fed. Cir. (T) at 30–31 (citing S.Rep. No. 95–778, at 31, *reprinted in* 1978 U.S.C.C.A.N. 2211, 2242). An additional purpose of the statute was to "bring the United States into conformity with international expectations interpreted to require that duty liabilities ... be ascertained and fixed generally within [one] year after entry." *Id.* at 1565, 748 F.2d 1560, 3 Fed. Cir. (T) at 33. Armed with this background, we turn now to the case before us.

## II.

The pertinent facts are not in dispute. In 1974, Commerce published a countervailing duty order covering imports of non-rubber footwear from Spain. *See Wolff Shoe,* 936 F.Supp. at 1086. From 1980 to 1982, Wolff made 203 separate entries of footwear which were subject to the order. *Id.* Wolff deposited estimated regular and countervailing duties for each of the entries. *Id.* at 1087–88. Pursuant to 19 U.S.C. § 1675(a), Commerce conducted annual reviews of the countervailing duty order in 1980, 1981, and 1982. *See Wolff Shoe,* 936 F.Supp. at 1086. Wolff's entries were included within these administrative reviews. Consequently, liquidation of Wolff's entries was suspended pending a final determination in each review. For each of the years under review, Commerce determined a countervailing duty rate that was greater than the rate upon which Wolff had based the deposit of duties at the time of entry.

The final results of the administrative reviews were challenged in the United States Court of International Trade. *See Volume Footwear Retailers of Am. v. United States,* 10 CIT 12 (1986). Wolff, however, was not among the plaintiffs challenging the results. *See Wolff Shoe,* 936 F.Supp. at 1089. On October 19, 1983, the *Volume Footwear* court entered a temporary restraining order directing Customs to suspend liquidation of all entries of non-rubber footwear from Spain

currently classifiable under items 700.0500 through 700.4575, 700.5605 through 700.5673, 700.7220 through 700.8360, and 700.9515 through 700.9545 of the Tariff

Schedules of the United States Annotated, which were exported on or before December 31, 1980, and entered, or withdrawn from warehouse, for consumption on or after January 1, 1980, and no later than May 2, 1982, and remain unliquidated as of 5 p.m. on the next business day following the date of service and receipt of this order.

*Wolff Shoe,* 936 F.Supp. at 1086. In response, Customs instructed its agents to suspend liquidation of all entries described in the court's order. On November 9, 1983, the court entered a preliminary injunction having the same scope as the temporary restraining order. *Id.* The court issued a second preliminary injunction on August 10, 1984, which restrained Customs from liquidating similar entries of non-rubber footwear from Spain "which were exported on or after January 1, 1981 and on or before May 2, 1982, and were entered, or withdrawn from warehouse, for consumption on or after January 1, 1981 and no later than May 2, 1982, and remain unliquidated as of 5 p.m. on [August 10, 1984]."

On May 15, 1985, after the case was voluntarily dismissed, the preliminary injunctions were dissolved. *See Volume Footwear Retailers,* 10 CIT at 13. Thereafter, in 1986, Customs liquidated Wolff's entries at the higher countervailing duty rates established by Commerce in the 1980 through 1982 reviews. *See Wolff Shoe,* 936 F.Supp. at 1086. As a result, Wolff deposited additional countervailing duties in excess of the estimated countervailing duties deposited by it at the time of entry.

Wolff protested the liquidation before Customs, seeking, among other things, a refund in the total amount of countervailing duties that it had deposited. *Id.* Wolff contended that all of its entries in 1980, 1981, and 1982 were deemed liquidated under 19 U.S.C. § 1504(d) because Customs had not liquidated the entries within four years after the date of entry. Continuing, Wolff argued that an importer need not pay any countervailing duties on entries which are deemed liquidated, the reason being that 19 U.S.C. § 1504(d) provides for deemed liquidation at the "duty asserted at the time of entry by the importer" and importers do not "assert"

countervailing duties. *See Wolff Shoe,* 936 F.Supp. at 1086. Wolff also sought alternative relief. It argued that even if countervailing duties do apply to entries which are deemed liquidated, it was entitled to a refund equal to the amount of countervailing duty that it had deposited at liquidation in excess of the countervailing duty deposited at entry (*i.e.,* the difference between the higher countervailing duty assessed at liquidation and the countervailing duty estimated at entry). *Id.* Customs denied relief on both of these grounds without comment. *Id.*

Wolff subsequently filed a summons in the Court of International Trade seeking review of Customs' decision. *See Wolff Shoe,* 936 F.Supp. at 1085. For administrative ease, Wolff's 1980 through 1982 entries were divided into three categories: Schedule I, Schedule II, and Schedule III entries.[6] Schedule I included 135 entries that were less than four years old when the injunctions restraining liquidation were dissolved on May 15, 1985, but more than four years old when Customs liquidated the entries in 1986. *Id.* at 1087. Schedule II included 58 entries that were more than four years old both when the injunctions were dissolved and when the entries were liquidated by Customs. *Id.* at 1089. On motion for summary judgment, Wolff repeated the arguments it had presented to Customs, claiming that the Schedule I and Schedule II entries were deemed liquidated under 19 U.S.C. § 1504(d) and that countervailing duties are not included in the rate and amount of duty owed when liquidation occurs by operation of law. In addition, Wolff repeated the alternative argument that it had made before Customs—that it was entitled to a refund equal to the amount of countervailing duty that it had deposited at liquidation in excess of the countervailing duty deposited at entry.

The government filed a cross-motion for summary judgment. In the motion, it conceded that the Schedule I entries were deemed liquidated.[7] *See Wolff Shoe,* 936 F.Supp. at 1087. However, it rejected Wolff's view that deemed-liquidated duties do not include countervailing duties. *Id.* Rather, the government asserted that, pursuant to 19 U.S.C. § 1504(d), the Schedule I entries were deemed liquidated at the amount of countervailing duties deposited by Wolff at entry. *Id.* Accordingly, the government asserted that Wolff was entitled to a refund equal to the amount of countervailing duties deposited in excess of the countervailing duties asserted at entry, but no more than that amount. As far as the Schedule II entries were concerned, the government argued that the entries were not liquidated by operation of law because liquidation was suspended by the court's order in *Volume Footwear* and that therefore Wolff was not entitled to any refund of the countervailing duties on the entries. *See Wolff Shoe,* 936 F.Supp. at 1089.

Addressing the parties' motions, the Court of International Trade determined that "countervailing duties assessed at the time of entry must be included in the rate of duty determined when liquidation is required by operation of law pursuant to 19 U.S.C. § 1504(d)." *Id.* Consequently, the court concluded that the Schedule I entries were "liquidated as a matter of law four years after their initial entry at the rate and amount of duty deposited by Wolff as regular duties and countervailing duties at the time of entry." *Id.* The court held that Wolff was entitled to a refund of all excess duties that it had paid. *Id.* The court thus granted the government's cross-motion for summary judgment insofar as it related to the Schedule I entries.

Turning to the Schedule II entries, the court ruled that because Wolff was not a party to the *Volume Footwear* case, pursuant to Rule 65(d) of the Rules of the Court of

---

**6.** The Schedule III entries are not relevant to the issues on appeal.

**7.** The government properly made this concession because the suspension required by the *Volume Footwear* injunctions ended on May 15, 1985—prior to the four year anniversary of entry of the Schedule I entries. Accordingly, when liquidation was not suspended by court order on the four year anniversary of entry, the Schedule I entries were deemed liquidated pursuant to 19 U.S.C. § 1504(d). In contrast, the suspension required by the *Volume Footwear* injunctions was in effect on the four year anniversary of entry of the Schedule II entries.

International Trade, the injunctions against liquidation entered in that case did not apply to Wolff. *See Wolff Shoe*, 936 F.Supp. at 1089–90. Thus, the court agreed with Wolff that Customs could have liquidated Wolff's entries before the *Volume Footwear* injunctions were dissolved. The court stated: "Pursuant to 19 U.S.C. § 1504(d), the entries under Schedule II were deemed liquidated at the expiration of four years from the date of entry at the rate of duty asserted by the importer at the time of entry...." *Wolff Shoe*, 936 F.Supp. at 1090. Accordingly, the court held that, in the case of the Schedule II entries, Wolff was entitled to a refund of duties paid in excess of those rates asserted at the time of entry. *Id.* Thus, the court accepted Wolff's alternative argument. The government's appeal and Wolff's cross-appeal followed.[8]

## DISCUSSION

### I.

■ Summary judgment is appropriate where the movant establishes that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Ct. Int'l Trade R. 56(d). In this case, the trial court granted summary judgment, finding no genuine issue of material fact precluding legal judgment. *See Wolff Shoe*, 936 F.Supp. at 1090. On appeal, we review the grant of summary judgment *de novo*, applying the same standard as the trial court. *See Canadian Fur Trappers Corp. v. United States*, 884 F.2d 563, 565, 7 Fed. Cir. (T) 136, 137–38 (1989). We decide questions of statutory interpretation *de novo*. *See*

*Guess? Inc. v. United States*, 944 F.2d 855, 857, 9 Fed. Cir. (T) 111, 113 (1991).

This case presents two questions of law involving the interpretation and application of 19 U.S.C. § 1504(d). First, in its appeal, the government challenges the ruling of the Court of International Trade with respect to Wolff's Schedule II entries. It argues that the Schedule II entries were not deemed liquidated under the statute because the injunctions issued in *Volume Footwear* suspended liquidation. Second, in its cross-appeal, Wolff argues that the Court of International Trade erred in concluding that, as far as the Schedule I and Schedule II entries were concerned, the estimated countervailing duties deposited at entry were subject to liquidation by operation of law pursuant to 19 U.S.C. § 1504(d). We address these contentions in turn.

### II.

■ An entry of merchandise is deemed liquidated at the expiration of four years from the date of entry unless liquidation is suspended by court order. *See* 19 U.S.C. § 1504(d). In deciding whether the Schedule II entries were deemed liquidated, we must first determine whether the injunctions that were issued in *Volume Footwear*, 10 CIT at 12, suspended liquidation of Wolff's entries even though Wolff was not a party in the case.[9] If the injunctions did not require Customs to suspend liquidation of Wolff's entries, the Schedule II entries were liquidated by operation of law and, as the Court of International Trade held, Wolff was entitled to a refund equal to the difference be-

---

8. The Court of International Trade discussed the issue of whether deemed-liquidated duties include countervailing duties in connection with the Schedule I entries, even though the question was relevant to both the Schedule I and Schedule II entries. However, after holding that the deemed-liquidated duties due in connection with the Schedule I entries included countervailing duties, the court did not have to repeat its analysis on that point with respect to the Schedule II entries. Rather, the court simply stated that the Schedule II entries were deemed liquidated "at the rate of duty asserted by the importer at the time of entry including any countervailing duty required to be paid." *Wolff Shoe*, 936 F.Supp. at 1089.

9. The *Volume Footwear* injunctions were understood to have suspended liquidation of entries by non-parties in two other cases. *See Canadian Fur Trappers Corp. v. United States*, 691 F.Supp. 364, 366 (C.I.T.1988), *aff'd*, 884 F.2d 563, 7 Fed. Cir. (T) 136 (1989) (The parties took the position that the *Volume Footwear* injunctions suspended liquidation of Canadian Fur's entries of non-rubber footwear from Spain even though Canadian Fur was not a party in the *Volume Footwear* case.); *Nunn Bush Shoe Co. v. United States*, 784 F.Supp. 892, 893 (C.I.T.1992) (The court determined, or at least assumed, that the *Volume Footwear* injunction suspended liquidation of a non-party's entries.).

tween the higher duty imposed by Customs at liquidation and the duty asserted by Wolff at entry. *See* 19 U.S.C. § 1504(d).

The Court of International Trade held that the *Volume Footwear* injunctions did not suspend liquidation of any of Wolff's entries, including the Schedule II entries. As noted, the court relied upon Rule 65(d) of its own rules, which limits the application of an injunction to parties to the suit in which the injunction is entered. *See Wolff Shoe*, 936 F.Supp. at 1089–90. Rule 65(d) of the Rules of the Court of International Trade is identical to Rule 65(d) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 65(d). The rule states that a preliminary injunction or restraining order "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Ct. Int'l Trade R. 65(d). The court reasoned that because Wolff was not a party in *Volume Footwear*, the injunctions issued in that case "could not be binding on Wolff." *Id.* at 1090.

Section 1504(d) provides for deemed liquidation unless liquidation "continues to be suspended as required by ... court order." The question here is not whether Wolff was a party in *Volume Footwear*, as the Court of International Trade stated. Rather, it is whether Customs was under court orders that required it to suspend liquidation of Wolff's entries. Customs was a party in *Volume Footwear*, and the court in that case restrained "Customs from liquidating *all* entries of non-rubber footwear from Spain." *Wolff Shoe*, 936 F.Supp. at 1086 (emphasis added); *see also Volume Footwear*, 10 CIT at 12. As written, the orders in *Volume Footwear* plainly included Wolff's entries. Rule 65(d) does not change that result. The *Volume Footwear* injunctions were not directed at Wolff, did not restrain it from taking any action, and did not require it to take any action. Wolff was merely affected by orders which enjoined the conduct of Customs, the defendant in *Volume Footwear*.

■ The government had no choice but to comply with the literal language of the *Volume Footwear* injunctions. "[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375, 386, 100 S.Ct. 1194, 1201, 63 L.Ed.2d 467 (1980); *United States v. United Mine Workers of America*, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947) (stating that a court order "must be obeyed by the parties until it is reversed by orderly and proper proceedings"). Given the broad language of the *Volume Footwear* injunctions, we conclude that Customs was under court order to suspend liquidation of the Schedule II entries.

■ Pointing to 19 U.S.C. § 1516a(c)(2), Wolff argues that the government's position is inconsistent with the statutory scheme, which allows "an interested party who is a party to the proceeding in connection with which the matter arises" to seek judicial review of a countervailing duty determination by Commerce.[10] 19 U.S.C. § 1516a(a)(2). Wolff interprets § 1516a(c)(2) as limiting the Court of International Trade's injunctive power. Specifically, Wolff contends that the language of § 1516a(c)(2) implies that the *Volume Footwear* court could only enjoin the liquidation of entries belonging to the plaintiffs before it. We disagree. Section 1516a(c)(2) empowers the Court of International Trade to enjoin the liquidation of "*some or all entries* of merchandise covered by a determination of [Commerce] ... upon a request by an interested party for such relief and a proper showing that the requested relief should be granted." 19 U.S.C. § 1516a(c)(2) (emphasis added). The *Volume Footwear* injunctions properly enjoined the liquidation of "all entries of non-rubber footwear from Spain" covered by Commerce's 1980, 1981, and 1982 reviews.

For that reason, Customs was prohibited from liquidating any entries subject to the *Volume Footwear* injunctions, including Wolff's entries. Accordingly, the Court of

---

10. The term "interested party" is defined in 19 U.S.C. § 1677(9). *See* 19 U.S.C. § 1516a(f)(3).

International Trade erred in holding that the *Volume Footwear* injunctions left Customs free to liquidate Wolff's Schedule II entries and that liquidation therefore occurred by operation of law pursuant to 19 U.S.C. § 1504(d). Wolff was not entitled to any refund with respect to the duties paid in connection with the Schedule II entries.

### III.

■ We turn next to the issue raised by Wolff's cross-appeal. As noted, the government conceded in the Court of International Trade that the Schedule I entries (which were less than four years old when the *Volume Footwear* injunctions were dissolved) were liquidated by operation of law four years after their entry.[11] However, it urged the court to reject Wolff's claim for a refund of all of the countervailing duties deposited by Wolff on the Schedule I entries, stating that Wolff was entitled to a refund only of those duties deposited after the date of deemed liquidation. The Court of International Trade agreed with the government, denying Wolff's request for a refund. In reaching that result, the court interpreted 19 U.S.C. § 1504(d) as meaning that the countervailing duties listed on entry papers and deposited at entry are "asserted ... by the importer," and thus must be included in the duty assessed when liquidation occurs by operation of law. 19 U.S.C. § 1504(d). On appeal, Wolff argues that the court erred in its interpretation because countervailing duties are assessed and collected by Customs, rather than "asserted ... by the importer." 19 U.S.C. § 1504(d); *see* 19 U.S.C. § 1500. Wolff thus contends that it was entitled to a refund of all countervailing duties that it had deposited. We disagree

and uphold the Court of International Trade's statutory construction.

The relevant statutory language provides that any entry not liquidated within four years is "deemed liquidated at the rate of duty, value, quantity and amount of duty asserted at the time of entry by the importer." 19 U.S.C. § 1504(d). Customs regulations state that entries deemed liquidated under 19 U.S.C. § 1504 are assessed "at the rate of duty, value, quantity, and amount of duties asserted by the importer at the time of filing an entry summary for consumption in proper form, with estimated duties attached." 19 C.F.R. § 159.11(a). The regulations thus equate the duties asserted by the importer with the estimated duties listed on the importer's entry papers and deposited at the time of entry with those papers.[12] In this case, Wolff included countervailing duties on its entry papers and deposited such countervailing duties at entry. *See Wolff Shoe*, 936 F.Supp. at 1087–88.

The Court of International Trade has interpreted the language "duty asserted at the time of entry by the importer" in 19 U.S.C. § 1504(d) to mean all of the duties claimed on the entry papers, including countervailing duties. *See American Permac, Inc. v. United States*, 642 F.Supp. 1187, 1195 n. 12 (C.I.T.1986) ("The amount of duties 'asserted at the time of entry by the importer', within the meaning of § 1504(a) and (d), is not what the importer desires to assert upon entry, but what the importer is required by Customs officers to assert when filing the entry summary."); *see also Detroit Zoological Soc. v. United States*, 630 F.Supp. 1350, 1356 n. 9 (C.I.T.1986). We agree with that interpretation.

First, nothing in the language of 19 U.S.C. § 1504(d) excludes countervailing duties from

---

**11.** Wolff's argument on cross-appeal is made with respect to both the Schedule I and Schedule II entries. However, because we have held that the Schedule II entries were not deemed liquidated under 19 U.S.C. § 1504(d), our discussion of the cross-appeal is limited to the Schedule I entries.

**12.** The language at issue in section 1504(d) is nearly identical to 19 U.S.C. § 1504(a). As discussed above, that section provides for liquidation by operation of law at the "rate of duty,

value, quantity, and amount of duties asserted at the time of entry by the importer." 19 U.S.C. § 1504(a). The pertinent Senate Report describes section 1504(a) as liquidating merchandise "at the rate of duty, value, quantity, and amount of duties asserted by the importer, his consignee, or agent in the entry document and import documents filed with Customs under section 484 of the Tariff Act at the time of entry." *See* S.Rep. No. 95–778, at 32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2211, 2243.

the duties "asserted at the time of entry by the importer." Second, it seems to us that to exclude such duties would yield an absurd result. *See Best Power Tech. Sales Corp. v. Austin,* 984 F.2d 1172, 1175–76 (Fed.Cir. 1993) (quoting *Haggar Co. v. Helvering,* 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940), for the proposition that an interpretation of a statute "which would lead to absurd results is to be avoided when [the statute] can be given a reasonable application consistent with [its] words and with legislative purpose"). As noted above, Congress enacted the deemed-liquidated provision to relieve importers of prolonged uncertainty, not to relieve them of countervailing duties. *See Ambassador,* 748 F.2d at 1562–63, 3 Fed. Cir. (T) at 30–31. Under Wolff's interpretation, importers would never be required to pay countervailing duties for entries liquidated by operation of law because they would never "assert" them. Indeed, taken to its logical extreme, Wolff's argument could reasonably be viewed as extending to regular duties because regular duties, like countervailing duties, are "estimated" at entry by Customs, not asserted by the importer. *See* 19 U.S.C. §§ 1500, 1505(a); *see also* 19 C.F.R. 141.103 ("Estimated duties shall be deposited in an amount deemed necessary by the ... director to sufficiently cover the prospective duties on each item being entered."). It could not have been within the contemplation of Congress to set aside the countervailing duty laws and regular duty laws when Customs fails to liquidate in a timely manner, because § 1504(d) expressly requires some amount of duty to be assessed. In short, we reject Wolff's challenge to the Court of International Trade's decision with respect to the Schedule I entries.

## CONCLUSION

The Court of International Trade erred in holding that the *Volume Footwear* injunctions did not suspend liquidation of Wolff's entries under 19 U.S.C. § 1504(d). However, it correctly determined that countervailing duties deposited at the time of entry and set forth on entry papers are "asserted at the time of entry by the importer" within the meaning of § 1504(d). Accordingly, the decision of the Court of International Trade is affirmed-in-part and reversed-in-part, and the case is remanded to the court for further proceedings consistent with this opinion.

## COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.*