# United States Court of Appeals for the Federal Circuit

---

**JBLU, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2015-1509

---

Appeal from the United States Court of International Trade in No. 1:12-cv-00042-NT, Senior Judge Nicholas Tsoucalas.

---

Decided: March 2, 2016

---

ELON ABRAM POLLACK, Stein Shostak Shostak Pollack & O'Hara, Los Angeles, CA, argued for plaintiff-appellant. Also represented by MANDY ANN EDWARDS, MATTHEW ROSS LEVITON.

ALEXANDER J. VANDERWEIDE, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by BENJAMIN C. MIZER, JEANNE E. DAVIDSON, AMY M. RUBIN.

---

Before MOORE, TARANTO, and STOLL, *Circuit Judges*.

MOORE, *Circuit Judge*.

JBLU, Inc. appeals from the United States Court of International Trade ("trial court") decision on summary judgment that U.S. Customs and Border Protection ("Customs") correctly determined that JBLU violated section 304 of the Tariff Act of 1930, as amended, by importing jeans that were not properly marked with their country of origin. We reverse and remand.

## BACKGROUND

JBLU is a California corporation registered to do business as C'est Toi Jeans USA. Between September 11 and October 20, 2010, JBLU imported into the United States jeans manufactured in China, including over 350,000 pairs in the eleven shipments at issue. The jeans were embroidered with "C'est Toi Jeans USA," "CT Jeans USA," or "C'est Toi Jeans Los Angeles" in various fonts on their backs, pocket linings, back waistbands, and hang-tags. JBLU filed trademark applications with the United States Patent and Trademark Office ("PTO") for "C'est Toi Jeans USA" and "CT Jeans USA" on October 8, 2010. The applications indicated that the two marks had been used in commerce since 2005. JBLU did not file a trademark application for "C'est Toi Jeans Los Angeles." It is un-clear whether there was evidence of the use of that mark. The imported jeans also had labels on their front waist-bands indicating they were "Made in China" in small font. The figure below depicts an example pair of the imported jeans. J.A. 39.



When the shipments arrived, Customs inspected samples of the jeans and determined that JBLU violated section 304 of the Tariff Act because the jeans did not comport with the marking requirements of 19 C.F.R. § 134.46.  Section 304 of the Tariff Act, as amended, requires that imported articles be marked with their country of origin:

> Except as hereinafter provided, every article of foreign origin (or its container . . . ) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article.

19 U.S.C. § 1304(a).  Section 304 further provides that the Secretary of the Treasury may by regulation, *inter alia*, "[d]etermine the character of words and phrases or abbreviations thereof which shall be acceptable . . . and prescribe any reasonable method of marking, . . . and a conspicuous place on the article (or container) where the marking shall appear."  *Id.* § 1304(a)(1).

Customs promulgated regulations under this authority in 1968, including the two regulations at issue that were renumbered in 1972 as 19 C.F.R. §§ 134.46 and 134.47. *See* Country of Origin Marking, 37 Fed. Reg. 2509 (Feb. 2, 1972) (renumbering the regulations as §§ 134.46 and 134.47); Country of Origin Marking, 33 Fed. Reg. 17,627-02 (Nov. 26, 1968) (adopting the regulations); Country of Origin Marking, 33 Fed. Reg. 12,332-01 (Aug. 31, 1968) (proposing the regulations). Under § 134.46, when words, letters, or names referring to a geographical location (e.g., "United States," "American," "U.S.A.") appear on an imported article or its container, and the words, letters, or names "may mislead or deceive the ultimate purchaser as to the actual country of origin of the article," the article must also be marked with its country of origin in a manner that is legible and permanent; "in close proximity to [the location] words, letters or name"; and "in at least a comparable size." 19 C.F.R. § 134.46.

Section 134.47 provides more lenient requirements for instances where the location words, letters, or name are "part of a trademark or trade name." 19 C.F.R. § 134.47. In such a case, the country of origin marking must be legible and permanent; "conspicuous[]"; and either "in close proximity [to the location words, letters, or name] or in some other conspicuous location." *Id.*

Customs determined that because JBLU's jeans were marked with "USA" and "Los Angeles," they must also be marked with their country of origin pursuant to § 134.46. It determined that JBLU's "Made in China" labels did not meet the requirements of § 134.46 because the country of origin markings were not in close proximity to and of at least the same size as "USA" and "Los Angeles." Customs thus issued Notices to Mark and/or Redeliver to JBLU. JBLU filed protests against the Notices, arguing that "C'est Toi Jeans USA," "CT Jeans USA," and "C'est Toi Jeans Los Angeles" were trademarks such that Customs

should have applied the more lenient requirements of § 134.47. JBLU argued that its "Made in China" labels met the requirements of § 134.47.

Customs agreed that JBLU's "Made in China" labels met the more lenient requirements of § 134.47 but determined that § 134.47 only applied to the jeans that were marked with "C'est Toi Jeans USA" or "CT Jeans USA" that were imported after JBLU filed its trademark applications for those marks ("the post-application jeans"). It accepted JBLU's protest as to those jeans. Customs determined, however, that § 134.46 applied to the jeans that were marked with "C'est Toi Jeans USA" or "CT Jeans USA" and were imported before JBLU filed its trademark applications ("the pre-application jeans"), and to jeans that were marked with "C'est Toi Jeans Los Angeles" ("the no-application jeans"). It determined that JBLU's "Made in China" labels did not meet the more stringent requirements of § 134.46. It thus denied JBLU's protest as to the pre-application and no-application jeans.

JBLU filed suit against the government at the trial court, contesting the denial of its protest with regard to the pre-application and no-application jeans. The parties cross-moved for summary judgment on whether Customs correctly determined that JBLU violated section 304 by not properly marking those jeans. The trial court granted the government's motion, denied JBLU's motion, and dismissed the case. JBLU appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Ct. Int'l Trade R. 56. We review the trial court's grant of summary judgment "for correctness as a matter of law, decid-

ing *de novo* the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist." *Guess? Inc. v. United States*, 944 F.2d 855, 857 (Fed. Cir. 1991).

If a regulation is clear on its face, no deference is given to the promulgating agency's interpretation, and we interpret the regulation in accordance with its unambiguous meaning. *Viraj Grp. v. United States*, 476 F.3d 1349, 1355 (Fed. Cir. 2007). Doing otherwise would allow the agency, "under the guise of interpreting a regulation, to create *de facto* a new regulation." *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). The fact that a term is not defined by a regulation does not make it ambiguous and entitled to deference. *Executive Jet Aviation, Inc. v. United States*, 125 F.3d 1463, 1468 (Fed. Cir. 1997) ("It is well settled that the legislature's failure to define commonly-used terms does not create ambiguity, because the words in a statute are deemed to have their ordinarily understood meaning." (internal quotation marks and citations omitted)). If a regulation is ambiguous, we give the promulgating agency's interpretation substantial deference "as long as [it] is neither plainly erroneous nor inconsistent with the regulation." *Gose v. U.S. Postal Serv.*, 451 F.3d 831, 836 (Fed. Cir. 2006).

The trial court decided on summary judgment that Customs correctly determined that JBLU violated section 304 of the Tariff Act with regard to the pre-application and no-application jeans. It reasoned that "C'est Toi Jeans USA," "CT Jeans USA," and "C'est Toi Los Angeles" were not "trademarks" under § 134.47 and that the more stringent requirements of § 134.46 thus applied. The trial court determined that because § 134.47 did not expressly define "trademark," Customs' interpretation was entitled to substantial deference unless it was plainly erroneous or inconsistent with the regulation.

The trial court determined that various decisions by Customs showed that Customs had consistently interpreted "trademark" in § 134.47 as limited to trademarks that were registered with the PTO and trademarks subject to a pending registration application. It determined that such an interpretation was not plainly erroneous or inconsistent with the regulation's purpose of preventing the ultimate purchaser from being misled or deceived when the name of a location other than the country of origin appears on imported merchandise.

JBLU argues that the trial court erred because an agency's interpretation of a regulation is entitled to deference only if the regulation is ambiguous. It argues that "trademark" in § 134.47 unambiguously includes federally registered and common law trademarks. We agree.

The record includes a dictionary definition of "trademark" from the time § 134.47 was promulgated as "the name, symbol, figure, letter, word, or mark adopted and used by a manufacturer or merchant in order to designate his goods and to distinguish them from any others." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1501 (1966). The dictionary definition of record is not limited to registered trademarks or trademarks with a pending application. Indeed, the definition notes that "[a] trademark is *usually* registered with a governmental agency," showing that it does not have to be. *Id.*

The version of the Lanham Act in effect at the time § 134.47 was promulgated similarly defines "trademark" as "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." 15 U.S.C. § 1127 (1946). This definition is echoed in the Lanham Act's current definition of "trademark" as "any word, name, symbol, or any combination thereof—(1) used by a person, or

(2) which a person has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, to identify and distinguish his or her goods." 15 U.S.C. § 1127 (2006). Neither definition is limited to registered trademarks or trademarks subject to a pending application.

These definitions are consistent with the fact that trademark rights stem from use, not registration. *See, e.g.*, *In re ECCS Inc.*, 94 F.3d 1578, 1579 (Fed. Cir. 1996); *San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 474 (10th Cir. 1988) ("Nor is a trademark created by registration. . . . The Lanham Act protects unregistered marks as does the common law."). *See also McCarthy on Trademarks and Unfair Competition* § 19:1.75 (4th ed. 2014) ("U.S. trademark law is seen as recognizing an intellectual property created and acquired by use. Government registration in the U.S. is essentially recognition of a right already acquired by use. . . . [R]egistration in the U.S. does not create the trademark.").

The government offers no competing dictionary or statutory definition of "trademark." *Cf. Viraj*, 476 F.3d at 1355 (finding that the term at issue was ambiguous based, in part, on the parties' presentation of competing dictionary definitions). *See also* Oral Argument at 19:45–20:04, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 15-1509.mp3. In fact, the government acknowledges "[t]here is no denying that the Lanham Act or a dictionary definition of the term 'trademark' provides for a broader array of marks than those for which recognition by the [PTO] has been formally requested." Government Br. 11; *see also* Oral Argument at 17:35–18:45. The government instead argues that the use of the word "trademark" in the intellectual property context does not inform its meaning in the context of § 134.47. We are not persuaded.

The word "trademark" in § 134.47 unambiguously includes trademarks without a pending application. This is consistent with the dictionary definition of record and the Lanham Act definitions from 1946 and today. We do not see a distinction between the clear meaning of the term in dictionaries and in the intellectual property context and the use of the term in § 134.47. There is nothing in the record indicating that the plain meaning of "trademark" is limited to registered trademarks and trademarks with pending applications. Nor is there anything in the record calling into question the unambiguousness of the term "trademark."

Like the dictionary definition, regulations in the same chapter as § 134.47 and regulations in a different chapter but the same title as § 134.47 use the word "trademark" to include registered and unregistered trademarks. *See, e.g.*, 19 C.F.R. §§ 133.11, 133.22, 148.55, 210.12.[1] When determining the plain meaning of a regulation, a court may look to the language of related regulations. *Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006) (citing *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1577–78 (Fed. Cir. 1995) (en banc)). The regulations here show that when Customs intended to limit a regulation to "registered trademarks," it expressly did so. Customs did not so limit "trademark" in § 134.47. We hold that the term "trademark" in § 134.47 is clear on its face. The trial court erred in deferring to Customs' interpretation because "trademark" in § 134.47 unambiguously includes unregistered trademarks that are not subject to a pending application.

Customs determined that the "Made in China" labels on JBLU's jeans satisfied the requirements of § 134.47.

---

[1]    The Tariff Act itself also distinguishes between "trademarks" and "registered trademarks." *See, e.g.*, 19 U.S.C. §§ 1337, 1526, 1681a.

We thus *reverse* the trial court's decision on summary judgment and *remand* for further proceedings consistent with this opinion.

## REVERSED AND REMANDED

### COSTS

Costs to JBLU.